IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – – – – – – – – – – x
                                                    :
U.S. SECURITY HOLDINGS, INC.; U.S.                  :
SECURITY ASSOCIATES HOLDINGS, INC.                  :
                                                    :
                     Plaintiffs,                    :
                                                    :    Case No.  1:19-cv-8025
         - against -                                :
                                                    :
RANDY ANDREWS,                                      :
                                                    :
                     Defendant.                     :
                                                    :
– – – – – – – – – – – – – – – – – – – – – – – – – – x


**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
<u>OMNIBUS MOTION TO DISMISS, TRANSFER, OR STAY</u>**


**BRYAN CAVE LEIGHTON PAISNER LLP**
1290 Avenue of the Americas
New York, New York 10104
T:  (212) 541-2000
F:  (212) 541-4630

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................. 1

ARGUMENT ............................................................................................................ 3

I.     RESPONSE TO RULE 12 DISMISSAL ARGUMENTS .................................... 3

     A.    The SPA Authorizes, Not Precludes, Plaintiffs' Contract Claim. ........................... 3

          1.    Article IX's Indemnification Provisions Cover Narrow, Specific Losses That Are Not At Issue. ........................................................ 4

          2.    Section 9.02(e) Of The SPA Does Not Preclude Plaintiffs From Bringing A Claim Against Defendant. ........................................... 5

          3.    By Its Plain Language, Section 9.09 Of The SPA Does Not Apply. ........... 6

          4.    Defendant's Flawed Interpretation Of The SPA Is Illogical. ................ 9

     B.    All Necessary Plaintiffs Have Been Joined. ........................................................ 11

          1.    Plaintiffs Hold The Rights Of American Premier Security, Inc., Which No Longer Exists As A Corporate Entity. ........................... 12

          2.    Andrews International Government Services, Inc. ("AIGSI"), A Non-Party To The SPA, Is Not Necessary To The Adjudication Of Plaintiffs' Contractual Rights. .................................................... 13

          3.    Andrews International, Inc. Need Not Be Joined As An Involuntary Plaintiff For The Additional Reason That It No Longer Exists. ............... 16

     C.    Defendant Can Be Sued For His Own Breach Of The SPA. ................................. 17

II.    RESPONSE TO TRANSFER ARGUMENTS ................................................. 20

     A.    Defendant Contractually Agreed To Waive Any Right To Challenge Venue. ....... 20

     B.    Defendant Cannot Overcome The Strong Presumption In Favor Of Enforcing The New York Forum Selection Clause. ......................................................... 24

          1.    The Private Interest Factors Referenced By Defendant Are Not Appropriate Considerations. ................................................... 25

          2.    The Public Interest Factors Do Not Warrant Transfer. ........................ 25

     C.    The First-Filed Rule Does Not Support A Dismissal, Transfer, Or Stay. ............ 28

1.    The Parties' Forum Selection Clause Trumps The First-Filed Rule..........29

2.    The Parties And Claims Are Not Sufficiently Similar..............................29

D.    <u>Defendant's Undue Delay Warrants Denial Of His Transfer Request.</u> ................32

CONCLUSION....................................................................................................................... 33

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AECOM Energy & Constr., Inc. v. Ripley*,
   348 F. Supp. 3d 1038 (C.D. Cal. 2018) ................................................................16

*Aguas Lenders Recovery Grp. v. Suez, S.A.*,
   585 F.3d 696 (2d Cir. 2009)....................................................................................22

*All Metro Health Care Servs., Inc. v. Edwards*,
   884 N.Y.S. 2d 648 (N.Y. Sup. Ct. 2009) ...............................................................23

*AMF Inc. v. Sleekcraft Boats*,
   599 F.2d 341 (9th Cir. 1979) ..................................................................................16

*Aquatic Amusement Assocs. v. Walt Disney World Co.*,
   734 F. Supp. 54 (N.D.N.Y. 1990).........................................................................32

*Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of N.Y.*,
   762 F.2d 205 (2d Cir. 1985)....................................................................................14

*Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Texas*,
   571 U.S. 49 (2013)...........................................................................................2, 24, 25

*Basch v. Talley Indus.*,
   53 F.R.D. 9 (S.D.N.Y. 1971) ..................................................................................12

*BNY Mellon, N.A. v. Lyell Wealth Mgmt., LLC*,
   No. 16-cv-896, 2016 WL 7377235 (S.D.N.Y. Dec. 8, 2016)...........................23, 25

*Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.*,
   126 F. Supp. 2d 596 (W.D.N.Y. 2001), *aff'd in part and rev'd in part*, 302
   F.3d 83 (2d Cir. 2002)............................................................................................31

*Caprio v. Wilson*,
   513 F.2d 837 (9th Cir. 1975) ..................................................................................14

*Carter v. U.S. Lines Co.*,
   200 F. Supp. 707 (S.D.N.Y. 1961) .........................................................................32

*Castillo v. Taco Bell*,
   960 F. Supp. 2d 401 (E.D.N.Y. 2013) ...................................................................30

*ConnTech v. Univ. of Conn.*,
   102 F.3d 677 (2d Cir. 1996)....................................................................................14

*Curtis v. Citibank, N.A.*,
   226 F.3d 133 (2d Cir. 2000) .................................................................................30

*D.H. Blair & Co., Inc. v. Gottdiener*,
   462 F.3d 95 (2d Cir. 2006) ...................................................................................22

*East Balt LLC v. East Balt US, LLC*,
   No. 10462-VCN, 2015 WL 3473384 (Del. Ch. Ct. May 28, 2015) .......................13

*Eastman Kodak Co. v. Sun Microsys., Inc.*,
   No. 02-CV-6074T, 2004 WL 1737214 (W.D.N.Y. Aug. 2, 2004) ...........................6

*Edward B. Beharry & Co. v. Bedessee Imports Inc.*,
   No. 09-cv-77, 2013 WL 12363612 (E.D.N.Y. June 24, 2013) ........................14, 15

*Effron v. Sun Line Cruises, Inc.*,
   67 F.3d 7 (2d Cir. 1995) .......................................................................................21

*Emed Technologies. Corp. v. Repro-Med Systems, Inc.*,
   No. 18-cv-5880, 2019 U.S. Dist. LEXIS 196994 (S.D.N.Y. Nov. 12, 2019) ....23, 24

*Encompass Aviation, LLC v. Surf Air Inc.*,
   No. 18-cv-5530, 2018 WL 6713138 (S.D.N.Y. Nov. 30, 2018) (McMahon, J.) ............ *passim*

*ErGo Media Capital, LLC v. Bluemner*,
   No. 15-cv-1377, 2015 WL 6442252 (S.D.N.Y. Oct. 23, 2015) .............................21

*Fanbrella, Inc. v. EDT Prods., Inc.*,
   185 F.R.D. 144 (E.D.N.Y. 1999) .....................................................................14, 15

*First City Nat'l Bank & Trust Co. v. Simmons*,
   878 F.2d 76 (2d Cir. 1989) .................................................................................4, 29

*Frazier v. Commercial Credit Equip. Corp.*,
   755 F. Supp. 163 (S.D. Miss. 1991) ........................................................27, 32, 33

*Galli v. Metz*,
   973 F.2d 145 (2d Cir. 1992) .................................................................................17

*Gen. Bank, N.Y. Branch v. Wassel*,
   779 F. Supp. 310 (S.D.N.Y. 1991) ........................................................................30

*Global Energy Fin. LLC v. Peabody Energy Corp.*,
   No. 08C-10-129 RRC, 2010 WL 4056164 (Del. Sup. Ct. Oct. 14, 2010) .............13

*Greenwich Life Settlements, Inc. v. ViaSource Funding Grp., LLC*,
   742 F. Supp. 2d 446 (S.D.N.Y. 2010) ...................................................................11

*Haggar Int'l Corp. v. United Co. for Food Indus. Corp.*,
  No. 03-cv-5789, 2005 WL 8157060 (E.D.N.Y. Mar. 16, 2005)..................................14, 15, 16

*Hamilton Int'l Ltd. v. Vortic LLC*,
  414 F. Supp. 3d 612 (S.D.N.Y. 2019)......................................................................................33

*Horowitz v. 148 South Emerson Assocs.*,
  LLC, 888 F.3d 13 (2d Cir. 2018) ..............................................................................28, 30, 31

*Horowitz v. 148 South Emerson Assocs., LLC*,
  No. 16-cv-2741, 2016 U.S. Dist. LEXIS 185189 (E.D.N.Y. Oct. 19, 2016)..........................31

*Hy Cite Corp. v. Advanced Mktg. Int'l, Inc.*,
  No. 05-cv-722, 2006 WL 3377861 (W.D. Wis. Apr. 10, 2006)..............................................29

*ICICI Bank Ltd. v. Essar Global Fund Ltd.*,
  565 B.R. 241 (S.D.N.Y. 2017)..........................................................................................22, 24

*Int'l Multifoods Corp. v. Commercial Union Ins. Co.*,
  309 F.3d 76 (2d Cir. 2002).......................................................................................................17

*LaSalle Bank Nat. Ass'n v. Nomura Asset Capital Corp.*
  424 F.3d 195 (2d Cir. 2005).....................................................................................................28

*Law Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*,
  595 F.3d 458 (2d Cir. 2010).....................................................................................................17

*Lucent Techs., Inc. v. Tatung Co.*,
  No. 02-cv-8107, 2003 WL 402539 (S.D.N.Y. Feb. 20, 2003) ................................................13

*Magi XXI, Inc. v. Stato Della Città Del Vaticano*,
  818 F. Supp. 2d 597 (E.D.N.Y. 2011), *aff'd sub nom.*, 714 F.3d 714 (2d Cir.
  2013) ........................................................................................................................................22

*Megadance USA Corp. v. Kristine Knipp*,
  623 F. Supp. 2d 146 (D. Mass. 2009) ......................................................................................29

*Midamines SPRL Ltd. v. KBC Bank NV*,
  No. 12-cv-8089, 2014 WL 1116875 (S.D.N.Y. Mar. 18, 2014), *aff'd*, 601
  Fed.Appx. 43 (2d Cir. 2015).....................................................................................................26

*Orix Credit Alliance, Inc. v. Mid-S. Materials Corp.*,
  816 F. Supp. 230 (S.D.N.Y. 1993) ..........................................................................................25

*Phillips v. Audio Active, Ltd*,
  494 F.3d 378 (2d Cir. 2007)......................................................................................................21

*Robert H. Law, Inc. v. Woodbine Bus. Park, Inc.*,
No. 13-cv-1393, 2018 WL 851382 (N.D.N.Y. Feb. 12, 2018) ................................................6

*Tomlinson v. Bd. of Educ. of Lakeland Cent. Sch. Dist. of Shrub Oak*,
223 A.D.2d 636 (N.Y. App. Div. 1996) ........................................................................18, 19

*U.S. v. Stamps*,
No. 18-cv-1106, 2018 WL 6031155 (E.D.N.Y. Nov. 16, 2018) ............................................33

*Dornoch Ltd. ex rel. Underwriting Members of Lloyd's Syndicate 1209 v. PBM
Holdings*,
666 F. Supp. 2d 366 (S.D.N.Y. 2009) ................................................................................29

*Universal Operations Risk Mgmt., LLC v. Global Rescue LLC*,
No. 11-cv-5969, 2012 WL 2792444 (N.D. Cal. July 9, 2012) ..............................................29

*Viacom Int'l, Inc. v. Kearney*,
212 F.3d 721 (2d Cir. 2000) ............................................................................................11

*Wyler-Wittenberg v. MetLife Home Loans, Inc.*,
899 F. Supp. 2d 235 (E.D.N.Y. 2012) ...............................................................................30

*Zullo v. Varley*,
57 A.D.3d 536 (N.Y. App. Div. 2008) ...............................................................................17

**Statutes**

28 U.S.C. § 1404(a) ..........................................................................................................20, 24

DEL. CODE ANN. tit. 8, §§ 251(a), 259(a) ..............................................................................12

**Other Authorities**

FED. R. CIV. P. § 12(b)(7) ................................................................................................14, 15

FED. R. CIV. P. § 19(a) .........................................................................................................14

FED. R. CIV. P. § 19(a)(1) .................................................................................................11, 14

FED. R. CIV. P. § 19(a)(1)(A) ................................................................................................14

FED. R. CIV. P. § 19(b) .................................................................................................11, 14, 16

FED. R. CIV. P. § 41(d) .........................................................................................................31

## PRELIMINARY STATEMENT

This is a straightforward breach of contract case that has been actively litigated by the parties for nearly a year in this Court. Plaintiffs' Complaint, filed in July 2019, alleges, quite simply, that Defendant has been using the corporate name "Andrews" in his latest security services business venture in violation of the plain terms of a 2012 Stock Purchase Agreement (the "SPA") wherein Defendant agreed to sell the "Andrews" corporate name. (Dkt. 1-1.) Faced with Plaintiffs' pending Motion for Partial Summary Judgment ("MSJ") (Dkt. 19), Defendant wants to keep the benefits associated with the sale of his security company for more than $100 million while being absolved of his contractual obligations to not ever again use the name he sold to Plaintiffs and to litigate any and all disputes in New York.

In February 2012, Plaintiffs acquired the Shares[1] of Andrews Holdings Co. and numerous Subsidiaries under the terms of the SPA. Defendant was a party and signatory to the SPA. Out of the more than $100 million that Plaintiffs paid under the SPA, multi-millions were attributed to the goodwill associated with the corporate name "ANDREWS." (*See* Dkt. 20-2 at PL 1347; Dkt. 20-10 at PL 49831.) As such, a material term of the SPA was its prohibition on "use [of] the corporate name ANDREWS, used alone or in combination with any other word or design" by "Seller, its parent entity or any of their Affiliates" "at any time ten days after the Closing Date." (SPA (Dkt. 20-1) at § 11.18.) In blatant violation of the SPA, Defendant established a new security services company prominently using the "ANDREWS" corporate name—Andrews Global Security. Not surprisingly, Defendant does not even attempt to argue that this use of the Andrews corporate name is permitted by a party to the SPA or that such use is not a breach.

---

[1] All capitalized terms not defined herein shall have the meaning set forth in the SPA.

Defendant instead seeks to immunize himself from any liability for such a post-Closing breach by arguing illogically that the SPA bars Plaintiff from enforcing the SPA's rights and obligations against Defendant. In particular, Defendant relies on inapplicable indemnification provisions in the SPA to assert that Plaintiffs cannot sue for breach, as they have done. Defendant also argues that he is not a party to the SPA or an "Affiliate"—a contention directly belied by the SPA's express terms, Defendant's execution of the agreement as a party, and the Complaint's allegations.

Defendant also seeks to derail the progress of this case by belatedly demanding dismissal for failure to join certain non-parties to the SPA as additional plaintiffs. Defendant, however, fails to support his assertion with any real analysis of the two-step test under Federal Rule of Civil Procedure 19. As noted, the entities Defendant argues should be joined have no interest in the SPA, and two of the three entities no longer legally exist. In fact, Plaintiffs were the "Parent" parties to SPA and are the rightful successors to the SPA Buyer's interests. It is irrelevant that a different entity holds trademarks and is pursuing separate litigation under the Lanham Act.

Because dismissal of this action is not warranted, Defendant asks that the Court transfer this case to United States District Court for the Central District of California, where a separate trademark action—between a different plaintiff and against Defendant, but also four other defendants—is pending. But the SPA designates New York as the exclusive venue for this dispute. (SPA § 11.14.) The Court's transfer analysis ends there. Contractual forum-selection clauses, like the one here, should "be given controlling weight in all but the most exceptional cases" and private interests must be disregarded. *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Texas*, 571 U.S. 49, 59-60 (2013).

Defendant waited more than a year into litigation—after expert reports and rebuttals were served, after Plaintiffs moved for summary judgment on liability, and with discovery now closed—to seek this relief. Defendant's motion to dismiss, transfer request, and motion to stay briefing on Plaintiffs' MSJ are nothing more than a delay tactic to attempt to avoid consequences for Defendant's blatant breach of the SPA. Defendant's Omnibus Motion should be denied.

## ARGUMENT

### I.      RESPONSE TO RULE 12 DISMISSAL ARGUMENTS

#### A.      The SPA Authorizes, Not Precludes, Plaintiffs' Contract Claim.

Contrary to Defendant's argument, the SPA's indemnification provisions in Article IX do not preclude Plaintiffs from bringing a claim for breach of Section 11.18 of the SPA. (Dkt. 26, § I.A.) A plain reading of Sections 9.02 and 9.09 of the SPA, cited by Defendant, reveals that Defendant misleadingly ignores critical clauses in those provisions to make his fallacious argument. In actuality, the indemnification provision does not apply to post-closing breaches of Defendant's obligations under the SPA.

Sections 9.02 and 9.09 of the SPA, by their terms, instead provide an indemnification mechanism to deal with breaches of the SPA's *pre-Closing* representations and warranties. Section 9.02 sets forth the limited scenarios in which indemnification is available for breaches of representations and warranties and proceeds to establish the mechanics and confines of such indemnification (including defining Minor Claims and setting a Deductible so that the parties were not bogged down in non-material disputes). Section 9.09 then disclaims any representations and warranties not memorialized in the SPA and sets indemnification as the sole remedy for *pre-Closing* inaccuracies or breaches of the SPA's representations and warranties. Nothing in Sections 9.02 and 9.09 impacts (let alone limits or precludes) the ability to bring a claim addressing a *post-Closing* breach of Article XI of the SPA.

3

**1.     Article IX's Indemnification Provisions Cover Narrow, Specific Losses That Are Not At Issue.**

Plaintiffs are not limited to pursuing an indemnification remedy against Defendant for his breach of the SPA. The SPA's Article IX indemnification provisions expressly apply <u>only</u> to Loss resulting from three narrow scenarios: "(i) a breach of any representation or warranty of Seller or the Company contained in Articles III and IV of this Agreement or in any Exhibit or certificate delivered hereunder with respect to a period on or prior to Closing, (ii) any nonfulfillment or breach of any covenant of Seller or the Seller's Representative requiring performance by Seller contained in this Agreement in any Exhibit or certificate delivered hereunder or (iii) the matters set forth on Schedule 9.02(a)(iii)." (SPA § 9.02(a).) None of those circumstances are at issue.

*First*, Section 11.18's prohibition on the use of the corporate name "ANDREWS" (part of Article XI of the SPA) is a post-Closing restriction in Article XI, <u>not</u> a representation or warranty made by the Seller or the Company contained in Articles III or IV of the SPA. *Second*, Section 11.18 is not a "covenant of Seller or Sellers' Representative requiring performance by Seller" contained in "any Exhibit or certificate delivered" under the SPA. The only Exhibits referenced in the SPA are: Exhibit A, a Non-Solicit Agreement (SPA § 2.02(e)(vii); Declaration of Sarah Walsh ("Walsh Dec.") ¶ 3, Ex. 1); Exhibit B, a Termination Agreement (SPA § 2.02(e)(viii); Walsh Dec. ¶ 4, Ex. 2); Exhibit C, a Stock Option Agreement (SPA § 7.03; Walsh Dec. ¶ 5, Ex. 3); Net Working Capital Exhibit (SPA § 10.01; Dkt. 20-2 at PL 1430-1432); and Exhibit D, Seller Indemnitors' Pro Rata Percentages (SPA § 10.01; Walsh Dec. ¶ 6, Ex. 4). None of these Exhibits addresses use of the "ANDREWS" corporate name. Nor do the "certificates" delivered in connection with the SPA. (SPA § 2.02(e)(i)—satisfaction of Closing pre-conditions; SPA § 2.02(e)(iii)—Board resolutions; SPA § 2.02(e)(iv)—incorporation and good standing certificates;

4

SPA § 6.04—FIRPTA certificate.) *Third*, use of the corporate name "ANDREWS" is not a "matter[] set forth on Schedule 9.02(a)(iii) to the SPA." Schedule 9.02(a)(iii) identifies four specific litigation matters. (Walsh Dec. ¶ 7, Ex. 5 at PL 1547; Dkt. 20-2 at PL 1370 (Seller's 4.07 Developments Schedule); Dkt. 20-2 at PL 1426 (Sellers' Schedule 4.22 Customers).) None of these matters are relevant to this case.

> **2.      Section 9.02(e) Of The SPA Does Not Preclude Plaintiffs From Bringing A Claim Against Defendant.**

Section 9.02(e) merely states that indemnification claims cannot be brought against a person or entity that is not a party to the SPA. Its language does not apply to parties to the SPA or to causes of action for breach of contract. Because Defendant <u>is</u> a party to the SPA (Compl. ¶¶ 1, 13, 14; Dkt. 26, § I.A.3 (Defendant conceding he is alleged to be party to SPA); *infra* § I.C) and Plaintiffs do not allege an indemnification claim, nothing in Section 9.02(e) precludes Plaintiffs from bringing a claim for breach of the SPA against Defendant.

Section 9.02(e) provides:

> Notwithstanding any other provision of this Agreement to the contrary, no **<u>claim</u>** shall be brought or maintained by any party or any of their respective Subsidiaries or their respective Affiliates or their respective successors or permitted assigns against any officer, director, employee (present or former) or Affiliate of the Company, or of any Affiliate of any of the above, as applicable (each of whom is deemed a third-party beneficiary of this Section 9.02(e), **<u>which is not otherwise expressly identified as a party hereto</u>**, and no recourse shall be sought or granted against any of them, by virtue of or based upon any alleged misrepresentations or inaccuracy in or breach of any of the representations, warranties, covenants or agreements of any party hereto set forth or contained in this Agreement or any exhibit or schedule hereto or any certificate delivered hereunder.

(SPA § 9.02(e) (emphasis added).) Defendant ignores this key limitation of Section 9.02(e); the highlighted clause is essentially the only one of Section 9.02 that Defendant's Motion does not emphasize. Section 9.02(e) only narrows the scope of the indemnification right available in

Section 9.02. This is highlighted by the SPA's use of "claim" in Section 9.02(e)—i.e. an indemnification claim—rather than "cause of action."

Moreover, Section 9.02(e) to the SPA must be read in conjunction with Section 9.02(a). *See Eastman Kodak Co. v. Sun Microsys., Inc.,* No. 02-CV-6074T, 2004 WL 1737214, *5 (W.D.N.Y. Aug. 2, 2004) (indemnity provisions of contract were limited in scope, did not govern parties' relationship "with respect to any issue other than indemnity," and did not bar plaintiff from bringing patent infringement action); *Robert H. Law, Inc. v. Woodbine Bus. Park, Inc.*, No. 13-cv-1393, 2018 WL 851382, *21 (N.D.N.Y. Feb. 12, 2018) (subsection relating to indemnification could not be read in isolation from other subsections because subsections were "plainly related"); *see also* SPA § 10.02(c) ("The words . . . 'this Section' and 'this subsection,' any words of similar import, refer only to the . . . Section or subsection hereof in which such words occur."). When Section 9.02(e) is read properly, in context, and with other corresponding provisions in Section 9.02, it is evident that only indemnification claims against non-parties to the SPA are barred. Section 9.02(e) is not a broad release of liability for prospective, future wrongdoing by parties to the SPA.

### 3.    By Its Plain Language, Section 9.09 Of The SPA Does Not Apply.

Section 9.09, too, must be read in connection with Section 9.02. Because Section 9.02 does not apply to this dispute, neither does Section 9.09. (*See supra* § I.A.2.) Similar to Section 9.02, read properly on its own and in context, Section 9.09 is only applicable to breaches of representations and warranties made <u>as of the Closing</u> of the SPA—not to the covenants or agreements in Article XI that survived indefinitely after Closing. (SPA § 9.01.)

Section 9.09 of the SPA is a standard, run-of-the-mill contractual provision that establishes that the only representations and warranties in Articles III and IV of the SPA—which pertain to the state of the Company being acquired and about the Seller's authority to sell the

Company—are those contained in this SPA. Section 9.09(a) disclaims any other representations made prior to execution of the SPA about the condition of the Company and Seller. This has nothing to do with post-Closing conduct that breaches the SPA. Defendant's Motion conveniently fails to address the language of Section 9.09(a), which unambiguously limits the applicability of Section 9.09 to breaches of Articles III and IV of the SPA. Section 11.18's prohibition on the use of the corporate name "ANDREWS" post-Closing is not one of the Article III or IV representations or warranties covered by Section 9.09(a).

Section 9.09(b) simply confirms that indemnification is the exclusive remedy for any inaccurate representations and warranties in Articles III and IV that existed "prior to Closing" (except with respect to fraud):

> Buyer understands, acknowledges and agrees that except to the extent of fraud **with respect to the representations and warranties contained herein** that is finally determined by a court of competent jurisdiction to be the direct result of conduct constituting fraud its defined in accordance with the laws of the State of New York (and not as the result of any claim based upon. any theory or doctrine of securities fraud or fraudulent conveyance), the indemnification provided to Buyer Indemnitees **pursuant to, and subject to the terms and conditions of, Section 9.02** will be the sole and exclusive remedy of the Buyer Indemnitees against any Person **with respect to (i) the subject matter of this Agreement or the transactions contemplated hereby or (ii) any other matter relating to the Company or its Subsidiaries prior to the Closing, the operation of their respective businesses prior to the Closing, or any other transaction or state of facts involving the Company or its Subsidiaries prior to the Closing (including any common law or statutory rights or remedies for environmental, health, or safety matters)** and that the Buyer Indemnitees will have no other remedy or recourse with respect to any of the foregoing other than pursuant to, and subject to the terms and conditions of, Section 9.02. Buyer acknowledges and agrees that the Buyer Indemnitees may not avoid such limitation on liability by (x) seeking damages for breach of contract, tort or pursuant to any other theory of liability or (y) asserting or threatening any claim against any Person that is not a party (or a successor to a party) for breaches of the representations, warranties, covenants and agreements contained in this Agreement . . .

(SPA § 9.09(b) (emphasis added).) Again Defendant entirely ignores that Section 9.02(b)'s disclaimers are limited to indemnification claims brought pursuant and subject to Section 9.02.

Reading Section 9.09(b) as pertaining to anything other than pre-Closing representations would read punctuation into the SPA that does not exist and would render chosen words superfluous. The following portion is all one clause of Section 9.09(b):

> . . . the indemnification provided to Buyer Indemnitees **pursuant to, and subject to the terms and conditions of, Section 9.02** will be the sole and exclusive remedy of the Buyer Indemnitees against any Person with respect to (i) the subject matter of this Agreement or the transactions contemplated hereby or (ii) any other matter relating to the Company or its Subsidiaries **prior to the Closing**, the operation of their respective businesses prior to the Closing, or any other transaction or state of facts involving the Company or its Subsidiaries prior to the Closing (including any common law or statutory rights or remedies for environmental, health, or safety matters) and . . .

(SPA § 9.09(b) (emphasis added).) All of the circumstances identified address matters that exist "prior to the Closing" of the SPA. The "prior to the Closing" language can only be read to modify (i) and (ii) in this sentence. There is no punctuation between (i) and (ii) that breaks this sentence out into separate clauses and the word "other" following (ii) would be meaningless if (i) and (ii) were not tied into each other. Thus, indemnification is the sole and exclusive remedy of the Buyer Indemnitees with respect to the subject matter of the SPA or transactions contemplated thereby prior to Closing, any other matter relating to the Company or its Subsidiaries prior to Closing, the operation of the respective business prior to Closing, or any other transaction or state of facts involving the Company or its Subsidiaries prior to Closing.

The waiver provision at the end of Section 9.09(b) would make no sense if Section 9.09(b) applied to Post-Closing Matters. That waiver reads:

> EACH OF THE BUYER INDEMNITEES EXPRESSLY WAIVES ALL RIGHTS AFFORDED BY ANY STATUTE WHICH SPECIFICALLY LIMITS THE EFFECT OF A RELEASE WITH RESPECT TO **UNKNOWN CLAIMS**. EACH OF THE BUYER INDEMNITEES UNDERSTANDS THE

SIGNIFICANCE OF THIS RELEASE OF **UNKNOWN CLAIMS** AND WAIVER OF STATUTORY PROTECTION AGAINST A RELEASE OF **UNKNOWN CLAIMS**. EACH BUYER INDEMNITEE ACKNOWLEDGES AND AGREES THAT THIS WAIVER IS AN ESSENTIAL AND MATERIAL TERM OF THIS AGREEMENT.

(SPA § 9.09(b) (emphasis added).) It covers only claims that existed at the time of execution of the SPA but that were "UNKNOWN." If the SPA was to be read to waive any claims pertaining to any subject matter at all time, undoubtedly, there would have been a waiver of "FUTURE"— not just "UNKNOWN"—claims. But this is not what the SPA says and Plaintiffs are not arguing that Defendant's breach of Section 11.18 existed at the time of the SPA's Closing but was "UNKNOWN." Defendant's breach arose post-Closing of the SPA.

### 4.    Defendant's Flawed Interpretation Of The SPA Is Illogical.

Not only does Defendant's proposed reading of the SPA controvert the unambiguous text of the SPA, but viewed in context, it also defies logic and would lead to the absurd result of leaving Plaintiffs with no remedy to address the breach of Section 11.18's material prohibition on use of the "ANDREWS" name post-Closing.

Defendant contends, on one hand, that indemnification is the "sole and exclusive remedy of the Buyer Indemnitees against any Person" but, on the other hand, that "no claim [can] be brought or maintained by any party . . . against any officer, director, employee (present or former) or Affiliate of the Company . . . and no recourse shall be sought or granted against any of them. . ." (*Compare* Dkt. 26, p. 5 (citing SPA § 9.02(e)) *with id.*, p. 6 (citing SPA § 9.09).) Defendant would have the Court believe that Plaintiffs contracted for a prohibition in the SPA on the use of the "ANDREWS" corporate name post-Closing (Compl. ¶ 15 (citing SPA § 11.18)), without also having any mechanism whatsoever to enforce Section 11.18 and pursue recourse against parties to the SPA who violate that term with impunity.

If, assuming *arguendo*, Plaintiffs' sole remedy was indemnification, but Plaintiffs are also barred from seeking indemnification from officers, directors or Affiliates of the Company— as Defendant contends—it would not just be Sections 9 or 11.18 of the SPA that would be rendered meaningless. So, too, would Section 11.21 of the SPA, in which it was "agreed that the parties will be entitled to seek an injunction or injunctions to prevent breaches of this Agreement by each other party and to enforce specifically the terms and provisions hereof against any party . . . this being in addition to any other remedy to which the parties are entitled at law or equity pursuant to this Agreement."[2]

Sections 11.14 and 11.15 of the SPA are also written far more broadly than would have be necessary if Plaintiffs' sole remedy was indemnification under Article IX. Under Section 11.14, for example, the parties consented to submit to exclusive jurisdiction of courts in New York, New York "in respect of the interpretation and enforcement of the provisions of this Agreement and any related agreement, certificate or other document delivered in connection herewith and by this Agreement." If, under Defendant's proposed sweeping interpretation of Sections 9.02 and 9.09, Plaintiffs were not precluded from bringing breach of contract claims altogether, Section 11.14 could have more narrowly covered consent to jurisdiction and service of process for claims brought under Section 9.02. Quite simply, the SPA establishes specific, contractually bargained-for provisions concerning venue, jurisdiction, service of process, and fees and costs (SPA, §§ 11.03, 11.14, 11.15, 11.21)—provisions wholly unnecessary if, as Defendant contends, the only claims that are recoverable under the SPA are for indemnification.

---

[2] Section 11.03 of the SPA providing for recovery of attorneys' fees in any "dispute between any parties with respect to obligations under this Agreement" would also be superfluous if only indemnification claims were allowed since a separate fee provision applies to indemnification claims (Section 9.02). Plaintiffs meant to cite Section 11.03, rather than 9.02, in their Complaint and MSJ.

### B.   <u>All Necessary Plaintiffs Have Been Joined.</u>

Plaintiffs' MSJ, filed before Defendant's instant Omnibus Motion, addresses Plaintiffs'—indisputable—standing to pursue their claim for breach of the SPA. (*See* Dkt. 22, § A.1.) Yet Defendant makes no attempt to address the facts, statutory authority, or case law that establish Plaintiffs' capacity to sue. Instead, Defendant now argues that three companies, which he submits own various registered trademarks—American Premier Security, Inc.; Andrews International, Inc.; and Andrews International Government Services, Inc.—were required to be named under Federal Rule of Civil Procedure 19 as Plaintiffs in this breach of contract action. (Dkt. 26, § I.B.) This argument is meritless.

"The burden of demonstrating that a party is necessary rests with the moving party." *Greenwich Life Settlements, Inc. v. ViaSource Funding Grp., LLC*, 742 F. Supp. 2d 446, 455 (S.D.N.Y. 2010). While Defendant sets forth the "two-step test" that the Court undertakes in deciding whether Rule 19 "warrants dismissal" (Dkt. 26, p. 8), he fails to meaningfully address the prongs of this test—including whether joinder is feasible and, if not, whether the party is "indispensable" or whether the action should proceed "in equity and good conscience" under Rule 19(b). FED. R. CIV. P. 19(a)(1), (b); *Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 724 (2d Cir. 2000) (vacating Rule 19 dismissal order).

In the one case Defendant principally cites, *Mieh, Inc. v. Tekno Products, Inc.,* a patent and copyright infringement case, the court's decision to stay—not dismiss—the case was specific to the United States Patent Act. No. 19-cv-178, 2019 U.S. Dist. LEXIS 156001, **5-6 (S.D.N.Y. Sept. 11, 2019). *Mieh* is also readily distinguishable because the plaintiff's rights to the patent, as governed by a licensing agreement, were contested and squarely the subject of another pending action filed by the third party who the defendant was claiming was a necessary party. *Id*. at **7-8. The court still noted, if plaintiff held all of the rights in the patent under the

licensing agreement, then the other party to the licensing agreement was not a necessary party under Rule 19. *Id.* at *9. As alleged in the Complaint (¶¶ 1, 9, 13, 41), Plaintiffs hold the rights under the SPA and there is no pending action contesting this. *Mieh* is inapplicable.

       **1.**    **Plaintiffs Hold The Rights Of American Premier Security, Inc., Which No Longer Exists As A Corporate Entity.**

Defendant advocates for the joinder of American Premier Security, Inc. since, as the Buyer, it acquired the rights to the "ANDREWS" corporate name under the SPA. (Dkt. 26, p. 8.) Such an argument concedes the propriety of U.S. Security Holdings, Inc. as a Plaintiff.

Plaintiffs U.S. Security Associates Holdings, Inc. and U.S. Security Holdings, Inc., were both parties to the SPA as "Parent" of the Buyer (American Premier Security, Inc.), thereby acquiring all shares of Andrews Holdings Co. and its subsidiaries. (Compl. ¶¶ 1, 9; SPA, p. 1 and at PL 1107 (signature page).) The SPA also provided that the SPA and "all of the provisions hereof will be binding upon and inure to the benefit of the parties and their respective successors . . ." (SPA § 11.06.) Post-Closing of the SPA, Plaintiff U.S. Security Holdings, Inc. stepped into the shoes of Buyer American Premier Security, Inc. by operation of law. On June 13, 2012, American Premier Inc. converted to American Premier Security, LLC. (Dkt. 20-6.) American Premier, LLC merged with and into U.S. Security Holdings, Inc., effective December 29, 2015. (Dkt. 20-7.)

When American Premier Security, LLC merged into Plaintiff U.S. Security Holdings, Inc., Plaintiff U.S. Security Holdings, Inc. became the single surviving corporation with all "property, rights, privileges, powers and franchise, and all and every other interest" once belonging to American Premier, LLC. *See* DEL. CODE ANN. tit. 8, §§ 251(a), 259(a); *Basch v. Talley Indus.*, 53 F.R.D. 9, 11 (S.D.N.Y. 1971) ("The law of Delaware is quite clear on this point. Once a corporation has been merged out of existence, its rights, privileges and very

identity are merged into the remaining corporation."). As a result, U.S. Security Holdings, Inc. holds all "rights, privileges and powers" of the former American Premier Security, Inc. and American Premier Security, LLC entities. This includes the right, privilege, and power to enforce the SPA. *See e.g., Lucent Techs., Inc. v. Tatung Co.*, No. 02-cv-8107, 2003 WL 402539, *2 (S.D.N.Y. Feb. 20, 2003) (limited liability company petitioner had standing because it was "merely the continuation of the existence of" the [original corporation] under a different name and a different form"); *East Balt LLC v. East Balt US, LLC*, No. 10462-VCN, 2015 WL 3473384, *1 (Del. Ch. Ct. May 28, 2015) (corporate "Seller" to an Asset Purchase Agreement later converted to an LLC and LLC was allowed to pursue claim for release of funds held in escrow under Asset Purchase Agreement); *Global Energy Fin. LLC v. Peabody Energy Corp.*, No. 08C-10-129 RRC, 2010 WL 4056164, **3, 32 (Del. Sup. Ct. Oct. 14, 2010) (granting summary judgment to plaintiff LLC in breach of contract case where it was not disputed plaintiff LLC was successor by merger to party to the agreement). (*See also* Dkt. 22, § A.1.) Therefore, any argument that Plaintiffs failed to join American Premier Security Inc. as a "necessary party" necessarily fails.

### 2. Andrews International Government Services, Inc. ("AIGSI"), A Non-Party To The SPA, Is Not Necessary To The Adjudication Of Plaintiffs' Contractual Rights.

AIGSI is the holder of certain registered trademarks for the name "Andrews International" and associated logo designs. (Walsh Dec. ¶ 8, Ex. 6.) Defendant's joinder argument rests on his fundamental misunderstanding that this is a trademark action. It is not. Plaintiffs' Complaint brings a single breach of contract claim. (Dkt. 1-1.) As such, Plaintiffs were not required to name non-parties to the SPA, like AIGSI or Andrews International, Inc., as parties to this case.

Rule 19(a) is invoked to join an involuntary plaintiff "almost exclusively in patent and copyright infringement cases." *Caprio v. Wilson*, 513 F.2d 837, 839 (9th Cir. 1975); *Haggar Int'l Corp. v. United Co. for Food Indus. Corp*., No. 03-cv-5789, 2005 WL 8157060, *8 (E.D.N.Y. Mar. 16, 2005). This is not such an action. Nevertheless, "[u]nder Rule 19(a)(1)(A),[3] a party is necessary only if, in that party's absence, complete relief cannot be accorded among those already parties." *Edward B. Beharry & Co. v. Bedessee Imports Inc*., No. 09-cv-77, 2013 WL 12363612, *3 (E.D.N.Y. June 24, 2013) (denying motion to dismiss) (internal citations, quotations, and emphasis omitted). "Complete relief" "refers only 'to relief as between the persons already parties, and not as between a party and the absent person whose joinder is sought." *Haggar*, 2005 WL 8157060, at *5 (quoting *Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of N.Y*., 762 F.2d 205, 209 (2d Cir. 1985)). Defendant does not argue that complete relief cannot be accorded to Plaintiffs and he fails to demonstrate how AIGSI's absence "would interfere with the according of complete relief among plaintiff[s] and defendant[]." *Haggar*, 2005 WL 8157060, at *4. This is because AIGSI's "presence is not necessary to decide whether" Defendant "breached the" SPA. *Id*.

"The general rule regarding a Rule 12(b)(7) motion where a contract is involved is that a non-party to a commercial contract ordinarily is not a necessary party to an adjudication of rights under the contract." *Fanbrella, Inc. v. EDT Prods., Inc.*, 185 F.R.D. 144, 149 (E.D.N.Y. 1999) (denying motion to dismiss for failure to join necessary party); *ConnTech v. Univ. of Conn*., 102 F.3d 677, 682 (2d Cir. 1996). *Fanbrella* is instructive. In that case, the plaintiff was a sports memorabilia company that brought claims for breach of contract, misappropriation of trade

---

[3] "For an absent party to be necessary within the meaning of Rule 19(a)(1)(B), the party must be the one claiming the interest. As a result, when an absent party has not moved to join the litigation, this subsection of Rule 19(a) is inapplicable." *Beharry*, 2013 WL 12363612, at *5.

14

secrets, and unfair competition against its marketing firm after the marketing firm planned to market a football helmet-shaped umbrella in violation of a nondisclosure agreement and licensing agreement. 185 F.R.D. at 146. The defendant moved to dismiss the complaint under the grounds that a third party "own[ed] the idea of helmet-shaped umbrellas." *Id*. at 148. Since that third party was not a party to the relevant contracts, the Court found it had "no real interest in the disposition of this matter." *Id*. at 149. Further, the non-party's "absence from these proceedings w[ould] not affect its ability to protect its interest, if any, in the helmet-shaped umbrella" and could "litigate in the appropriate court against any of the parties in this litigation, based upon an infringement of its trademark." *Id*.

As in *Fanbrella*, this is a breach of contract action which has named the appropriate parties to the contract. Non-parties to the SPA are not required to be named as plaintiffs and nothing about this lawsuit prevents AIGSI from pursuing a trademark infringement claim in the appropriate court. This is particularly so where "[t]he potential for litigation in two separate fora does not automatically render a non-party necessary." *Beharry*, 2013 WL 12363612, at *4 (recommending denial of defendants' motion under Rule 12(b)(7)); *Haggar*, 2005 WL 8157060, at *14 ("[T]he fact that multiple suits may arise out of the claim underlying this action does not justify compulsory joinder of [trademark] as an involuntary plaintiff.").

Defendant argues that he has an interest in not being "subject to multiple lawsuits, double damages assessments, and potential inconsistent judgments." (Dkt. 26, p. 8.) This, alone, does not justify compulsory joinder of an involuntary plaintiff who is not a signatory to the SPA on which this breach of contract action is based. Still, Defendant does not offer any substantiation of his bare allegation that a risk of double damages assessments or inconsistent judgement exists. In this case, Plaintiffs are seeking damages for the impairment to the "ANDREWS" corporate name

as a result of Defendant's breach of the SPA, whereas in the pending Lanham Act case in the Central District of California, plaintiff AIGSI has made clear that the remedy it seeks is disgorgement of the defendants' revenues (Defendant is only one of five defendants). (Declaration of Brian Sher ("Sher Dec.") ¶ 2.) There is no overlap in these damages theories and, therefore, no risk of double damages assessments or inconsistent judgments.

Nor is there overlap in the substantive issues to be resolved. The only issues in this case are whether the SPA prohibited Defendant from using the "ANDREWS" corporate name, whether Defendant used it, and Plaintiffs' resulting contract damages. In contrast, under the Lanham Act, the court must decide a number of issues including, but not limited to, the "registrant" of the trademark (*see Haggar*, 2005 WL 8157060, at *10), the amount to be disgorged, and whether trademark use gives rise to a likelihood of confusion. *See AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979). These are all irrelevant in a simple breach of contract case. It thus cannot be said that the issues are so "inextricably intertwined" that this action cannot proceed in equity and good conscience under Rule 19(b).

### 3.   Andrews International, Inc. Need Not Be Joined As An Involuntary Plaintiff For The Additional Reason That It No Longer Exists.

For the same reasons that AIGSI, as a trademark holder, is not a necessary plaintiff to this contract action, Andrews International, Inc. is also not a necessary plaintiff. (*See supra* § I.B.2.) This is especially so given that AIGSI and Andrews International, Inc. are one and the same. Effective May 31, 2017, Andrews International, Inc. merged with and into AIGSI. (*See* Walsh Dec. ¶ 9, Ex. 7 at PL 67249 (authenticating Certificate of Merger) and PL 67278-67279 (Certificate of Merger).) As a result, Andrews International, Inc. ceased to exist and AIGSI retained any legal rights to Andrews International, Inc.'s trademarks. (*See supra* § I.B.1.) *See also e.g., AECOM Energy & Constr., Inc. v. Ripley*, 348 F. Supp. 3d 1038, 1051-52 (C.D. Cal.

2018) (granting plaintiff's motion for summary judgment and holding plaintiff retained same legal rights to trademarks through corporate name changes and mergers).

### C.   Defendant Can Be Sued For His Own Breach Of The SPA.

Defendant signed the SPA without limitation and is thus bound to the SPA as a party to it. While Defendant could have signed the SPA "solely with respect to" certain sections, he did not do so. Nothing in the SPA says or suggests that, as a "Rollover Seller," Defendant is only bound to comply with certain provisions or that he is conferred immunity from liability with respect to other provisions. Defendant, though, attempts to limit his obligations under the SPA by focusing the SPA's use of defined terms, in his case "Rollover Seller." Yet, in the context of the SPA, the parties' use of defined terms, like "Rollover Seller," served simply as shorthand reference for drafting convenience. Defendant's argument is yet another attempt to rewrite or ignore the plain text of the SPA to shield Defendant from liability.

A plain reading of the SPA makes clear that Defendant is a party to the agreement bound by its terms, regardless of any shorthand title of convenience. It is well-settled under New York law that, "[w]here possible, a contract should be interpreted to avoid inconsistencies and to give meaning to all of its provisions, giving a practical and reasonable interpretation to the language employed and the parties' reasonable expectations with respect thereto." *Zullo v. Varley*, 57 A.D.3d 536, 537 (N.Y. App. Div. 2008). "[I]nterpretation of a contract that has 'the effect of rendering at least one clause superfluous or meaningless" is to be "avoided if possible." *Int'l Multifoods Corp. v. Commercial Union Ins. Co*., 309 F.3d 76, 86 (2d Cir. 2002) (citing *Galli v. Metz*, 973 F.2d 145, 149 (2d Cir. 1992)). Further, terms chosen by contracting parties should not be unnaturally "strain[ed]" beyond their plain and ordinary meaning. *Law Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.,* 595 F.3d 458, 467 (2d Cir. 2010). In a contract, the ordinary meaning of the term "parties" is "those with whom the contract is actually made or entered into."

*Tomlinson v. Bd. of Educ. of Lakeland Cent. Sch. Dist. of Shrub Oak*, 223 A.D.2d 636, 638 (N.Y. App. Div. 1996) (citing BLACK'S LAW DICTIONARY, 1119 (6th ed. 1991)).

A common sense reading of the SPA establishes that Defendant is a party to it bound by its terms. Under Section 11.12 of the SPA, the parties agreed that the SPA could be executed in multiple counterparts, "any one of which need not contain the signatures of more than one party, but all such counterparts taken together will constitute one and the same instrument." As such, the signature page to the SPA starts, "IN WITNESS HEREOF, **the parties** have executed this Stock Purchase Agreement on the day and year first above written." (SPA at PL 1106 (emphasis added).) Defendant's signature follows as he executed the SPA in a counterpart as a "party." (SPA at PL 1108 (signature page).)

The opening section of the SPA also makes clear Defendant is a party to the agreement:

NOW, THEREFORE, in consideration of the premises, representations and warranties and mutual covenants contained herein and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and intending to be legally bound, **the parties** agree as follows:

(SPA, p. 1 (emphasis added).)

The representations, warranties, and covenants that follow throughout the remainder of the SPA are not limited to only those provisions that do not concern "Rollover Sellers." Instead, the premises, representations, warranties, and covenants apply to Rollover Sellers, Buyer, Seller, Parent, the Company, Sellers' Representative, Affiliates, etc.—in other words, all of the "parties" to the SPA. Additionally, "[a]ny number of Cash Sellers" could "be added **as parties** to the Agreement . . . by executing a counterpart signature page and delivering copies . . ." (SPA § 11.26 (emphasis added).) The term "parties" is used throughout the SPA, including in reference to Rollover Sellers. (*See e.g.,* SPA § 1.02(f) ("If the Final Aggregate Closing Consideration is less than the Estimated Aggregate Closing Consideration . . . such shortfall will be settled

18

proportionately as described below by (i) the Rollover Sellers delivering to the Partnership Rollover Units (valued at fair market value, which the parties agree shall be the Rollover Price Per Unit)…"); SPA § 1.02(g) ("For Tax purposes, all payments of cash and deliveries of Rollover Units required . . . will be treated by the parties as an adjustment…").) Defendant is also expressly identified as a "Seller Indemnitor." (SPA § 9.02 (defining "Seller Indemnitors" as including "Seller, each Rollover Seller and each Cash Seller").) This brings him within the purview of Section 9.05, which addresses "Inter-**Party** Claims." (emphasis added). (*See also* SPA § 11.25 (appointing Sellers' Representative as agent for Defendant and others).)

Nowhere in the SPA have the parties ascribed any alternative meaning to the word "party" that excludes Defendant. If "parties" covered solely the SPA's Buyer and Seller, the term easily could have been defined in this way. The term "parties" could have been omitted from the SPA altogether and the SPA could have used only the defined terms set forth in the opening paragraph of the SPA. Alternatively, the Rollover Sellers could have entered into separate agreements that addressed their respective obligations and rights and not signed onto the SPA at all. However, the parties to the SPA, including Defendant, chose not to memorialize their agreement in this way, adopting a broader approach as to "those with whom the contract is actually made or entered into." *Tomlinson*, 223 A.D.2d at 638.

Because Defendant is a party to the SPA, Section 11.16, to which Defendant cites (Dkt. 26, pp. 10-11), is irrelevant. Section 11.16, merely provides that: "No Person other than the parties will have any rights, remedies, obligations, or benefits under any provision of this Agreement . . ." Defendant, as a party, plainly has rights, remedies, obligations, and benefits under the SPA. Those include his obligation to refrain from using the "ANDREWS" corporate name as provided in SPA Section 11.18.

Contrary to Defendant's suggestion (Dkt. 26, p. 9), Plaintiffs are not suing Defendant as the corporate officer of an entity that breached the SPA and are not seeking to hold Defendant liable for the Seller's breach of the SPA. Plaintiffs are suing Defendant personally for his own breaches of the SPA. For this reason, the cases cited in Defendant's Motion regarding suing a corporate officer on a contract with the officer's corporation (Dkt. 26, § I.C) are inapposite. Defendant signed the SPA in his individual name on behalf of himself as an individual. Nothing in his signature block indicates that he was signing as an agent or corporate officer of a principal entity. (SPA at PL 1108 (signature page).) His unambiguous signature is clear and explicit evidence that Defendant is personally bound to the SPA. Defendant must now face the consequences for his breach of the SPA.

## II.   RESPONSE TO TRANSFER ARGUMENTS

### A.   Defendant Contractually Agreed To Waive Any Right To Challenge Venue.

Defendant asks this Court to transfer this case to the Central District of California pursuant to 28 U.S.C. § 1404(a) to be consolidated with a pending trademark action in the event the Court is not inclined to grant his motion to dismiss. Defendant, however, has contractually agreed to venue in this forum for all disputes relating to the SPA <u>and has expressly waived his right to challenge it</u>. The SPA, which Defendant executed, without limitation, plainly provides:

> [T]he parties to this Agreement **submit to the exclusive jurisdiction of the state courts located in New York, New York or the courts of the United States located in New York, New York** in respect of the interpretation and enforcement of the provisions in this Agreement and any related agreement certificate or other document delivered in connection herewith and by this Agreement **waive, agree not to assert, any defense in any action** for the interpretation or enforcement of this Agreement and any related agreement, certificate, or other document delivered in connection herewith, that they are not subject thereto or **that such action may not be brought in or is not maintainable in such courts or that this Agreement may not be enforced in or by such courts** or that their property is exempt or immune from execution, **that the action is brought in an inconvenient forum**, or that the venue of the action is improper.

(SPA, § 11.14 (emphasis added).)

Courts in this District routinely recognize "the strong federal public policy supporting the enforcement of forum selection clauses." *Encompass Aviation, LLC v. Surf Air Inc.*, No. 18-cv-5530, 2018 WL 6713138, *5 (S.D.N.Y. Nov. 30, 2018) (McMahon, J.) (collecting cases). This Court has observed that "[b]y signing the MIPA, Defendant agreed that, if Plaintiff brought a suit in this Court, it would submit to the 'exclusive jurisdiction' of this Court, would not object to venue, and would not claim that this Court was an inconvenient forum . . . But that is exactly what Defendant is doing by making this motion. The Court cannot ignore the [contract's] plain language, to which the Parties agreed." *Id.* at *9 (denying similar motion to transfer breach of contact action to Central District of California).

Here too, the Court "cannot ignore" the plain language in the valid and enforceable forum selection clause in the SPA, to which Defendant agreed. To determine whether a forum selection clause is valid and enforceable, the Second Circuit Court of Appeals has endorsed a four-part analysis: (1) the court must determine whether the clause was reasonably communicated to the party resisting enforcement; (2) the clause must be mandatory, rather than permissive; (3) the relevant claims and parties must be subject to the clause; and (4) enforcing the clause must not be unreasonable or unjust, such as when the clause is invalid because of fraud or overreaching. *Phillips v. Audio Active, Ltd*, 494 F.3d 378, 383-84 (2d Cir. 2007). All of these elements are met. The SPA's forum selection clause is valid and enforceable.

**Reasonably Communicated.** The forum selection clause in the parties' SPA was reasonably communicated to Defendant, as it was written in "clear and unambiguous language." *Effron v. Sun Line Cruises, Inc.*, 67 F.3d 7, 9 (2d Cir. 1995); *ErGo Media Capital, LLC v. Bluemner*, No. 15-cv-1377, 2015 WL 6442252, *2 (S.D.N.Y. Oct. 23, 2015). Defendant does not

claim an unawareness of the forum selection consent clause; it was plainly printed on the SPA. *See D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006). It appears in a separate, stand-alone paragraph, with an underlined heading entitled, "Consent to Jurisdiction and Service of Process." *See Magi XXI, Inc. v. Stato Della Città Del Vaticano*, 818 F. Supp. 2d 597, 605 (E.D.N.Y. 2011) (forum selection clauses "were reasonably communicated because they are clearly and unambiguously phrased, and appear in standard font in the main body of each contact [sic]"), *aff'd sub nom.*, 714 F.3d 714 (2d Cir. 2013).

**Mandatory**. The clause, providing for "exclusive jurisdiction" of New York state and federal courts, is mandatory, not permissive. Not only does the forum selection clause identify New York as the "exclusive" forum, but it also includes an express waiver of any assertion "that the action is brought in an inconvenient forum, or that the venue of the action is improper." Consequently, once Plaintiffs filed this action and laid venue in the designated forum, Defendant's contractual agreement to waive any challenge to venue became mandatory. *See ICICI Bank Ltd. v. Essar Global Fund Ltd.*, 565 B.R. 241, 253 (S.D.N.Y. 2017) (forum selection clause containing waiver of challenge to venue "became mandatory once Plaintiff had filed suit in one of the designated fora"); *Aguas Lenders Recovery Grp. v. Suez, S.A.*, 585 F.3d 696, 700 (2d Cir. 2009) (forum selection clause containing waiver of *forum non conveniens* "amounts to a mandatory forum selection clause at least where the plaintiff chooses the designated forum"). While Defendant contends that the clause is permissive because of the exception for arbitration under Section 1.02 of the SPA, the exception only applies to disputes over items on the Closing Statement and is not applicable here. The clause is mandatory as to this breach of contract action.

**Application to Claims and Parties**. The breach of contract claim comes within the scope of the clause governing "the interpretation and enforcement of the provisions in this

Agreement." Defendant asserts, without any authority, that he is not bound by the SPA because "he did not sign the SPA in his individual capacity," but instead signed it "in his capacity as a shareholder of the rollover stock." (Dkt. 26, § II.C.1.) This is a nonsensical distinction, because as a rollover seller, Defendant was signing the SPA as a seller of <u>his own stock</u>. In any event, the SPA's forum selection clause, including its waiver of any venue challenge, would still be enforceable against Defendant even if he had only signed the SPA "solely with respect to" certain provisions (which he did not). *See e.g., BNY Mellon, N.A. v. Lyell Wealth Mgmt., LLC*, No. 16-cv-896, 2016 WL 7377235, *6 (S.D.N.Y. Dec. 8, 2016) (denying motion to transfer where Asset Purchase Agreement contained forum selection clause nearly identical to that of the SPA, even where the individual defendant had only signed with respect to a singular non-solicitation covenant in the Asset Purchase Agreement); *All Metro Health Care Servs., Inc. v. Edwards*, 884 N.Y.S. 2d 648, 867-68 (N.Y. Sup. Ct. 2009) (individual defendant was bound by contractual arbitration clause, even though he only signed as to one provision of the contract). The forum selection clause in the SPA would also still be enforceable against Defendant as someone closely related to a signatory, even if he was not a signatory to the SPA in any capacity. *See BNY Mellon*, 2016 WL 7377235, at *6 (collecting cases).

      **Reasonable and Just.** Defendant has made no claim that the forum selection clause is invalid because of fraud or overreaching. While Defendant suggests that Plaintiffs improperly refused to accept his offer to waive compliance with the forum selection—an offer about which Defendant has provided no evidentiary support, by declaration or otherwise—Plaintiffs, as contracting parties, have every right to insist on Defendant's performance of the agreed-upon provision. *Emed Technologies. Corp. v. Repro-Med Systems, Inc*., No. 18-cv-5880, 2019 U.S. Dist. LEXIS 196994 (S.D.N.Y. Nov. 12, 2019), cited by Defendant, is inapposite because it did

not involve a contract with a mandatory forum selection clause. Instead, the plaintiff was sanctioned for unjustifiably "fil[ing] the case in a venue that was manifestly improper under recent Supreme Court precedent" that limited the permissible venue for patent suits. *Id*. at **22-23, 25. As the Supreme Court has explained: "The enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." *Atl. Marine*, 571 U.S. at 63.

### B. Defendant Cannot Overcome The Strong Presumption In Favor Of Enforcing The New York Forum Selection Clause.

"Under 28 U.S.C. § 1404(a), a district court may, for the convenience of the parties and witnesses, and in the interest of justice . . . transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." *Encompass Aviation*, 2018 WL 6713138, at *4. As the "party seeking a change of venue," Defendant "has the burden of establishing by clear and convincing evidence that transfer is warranted." *Id*. (emphasis added). He cannot meet this burden.

Typically, in deciding a motion to transfer filed pursuant to Section 1404(a), "the court evaluates both the convenience of the parties and various public-interest considerations by weighing the relevant factors and deciding whether, on balance, a transfer would serve the convenience of the parties and witnesses and otherwise promote the interest of justice." *Encompass Aviation*, 2018 WL 6713138, at *5. "The calculus changes, however, when the parties' contract contains a valid forum-selection clause." *Id*. "[A] valid forum-selection clause should be given controlling weight in all but the most exceptional cases." *Atl. Marine*, 571 U.S. at 63 (emphasis added); *ICICI Bank,* 565 B.R. at 253 ("[T]he forum-selection clauses in Defendants' guarantee agreements are presumptively enforceable."). This breach of contract action is not one of those exceptional cases.

### 1.   The Private Interest Factors Referenced By Defendant Are Not Appropriate Considerations.

Defendant's Motion devotes most of its attention to private interests, like the convenience of parties and witnesses, though without any evidentiary support.[4] (Dkt. 26, §§ II.B.2, 3, 4, 5, 6, 7, 10.) These interests, however, are not permissible considerations where, as here, the parties' contract contains a forum selection clause. *See Atl. Marine*, 571 U.S. at 64 (When a forum selection clause applies, "the district court <u>does not consider</u> arguments about the parties' private interests . . . A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum.") (emphasis added); *Orix Credit Alliance, Inc. v. Mid-S. Materials Corp.,* 816 F. Supp. 230, 234 (S.D.N.Y. 1993) ("A forum selection clause is determinative of the convenience of the parties"); *BNY Mellon*, 2016 WL 7377235, at *7 ("When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses.").

### 2.   The Public Interest Factors Do Not Warrant Transfer.

Defendant's Motion does not address any public interest factors, apart from isolated, vague, unsupported references to "interests of justice." (Dkt. 26, § II.B.11.) But the public interest factors to be considered include: "[1] administrative difficulties flowing from court congestion; [2] the local interest in having localized controversies decided at home; and [3] the interest in having the trial of a diversity case in a forum that is at home with the law." *Encompass Aviation*, 2018 WL 6713138, at *6. However, "public interest factors will rarely defeat" the

---

[4] Had private interest factors had any import in light of the SPA's forum selection clause, Defendant would have failed to meet his burden to prove they warranted transfer. He argues California would be more convenient for witnesses, but does not identify who they are, where they reside, or why they have any relevance to this action. Defendant also cannot claim that he does not have the resources to travel to New York for trial, if necessary. To prospective Andrews Global customers, Defendant has boasted having in excess of $10 million in liquid assets. (Dkt. 23, ¶ 40.)

chosen forum "and thus 'the practical result is that forum-selection clauses should control except in unusual circumstances.'" *Midamines SPRL Ltd. v. KBC Bank NV*, No. 12-cv-8089, 2014 WL 1116875, *3 (S.D.N.Y. Mar. 18, 2014), *aff'd*, 601 Fed.Appx. 43 (2d Cir. 2015). The public interest factors all militate against transfer.

**Administrative Difficulties**. Defendant offers no evidence of administrative concerns. *See Encompass Aviation*, 2018 WL 6713138, at *10 ("Defendant has pointed to no evidence of administrative concerns"). Nor can he. While this Court may be busy, "[t]hey are equally busy in California." *Id.*

In fact, this case has progressed faster and is much further along than any of the unrelated, pending California actions referenced in Defendant's Motion. In this case, the parties exchanged expert reports four months ago and expert rebuttal reports two months ago. (Dkt. 13-1, 14.)  Discovery concluded last month (Dkt. 29) and Plaintiffs filed for summary judgment on the issue of liability on August 3, 2020. (Dkt. 19-23.) In contrast, the schedules in the California cases are not as far along:

- Central District of California, Case No. 19-cv-02042: Expert discovery will not be complete until February 2021 and the dispositive motion hearing cut-off is not until March 29, 2021. (Sher Dec. ¶ 3, Ex. 8.)

- Superior Court of the State of California for the County of Los Angeles, Case No. 18STCV02533 (an action to which Defendant is not a party): Due to the defendants' dilatory tactics, discovery abuses, and frivolous appeals, the action is still in the discovery stage. Fact discovery does not close until March 29, 2021, expert discovery does not close until April 12, 2021, and the dispositive motion deadline is not until March 26, 2021. (Sher Dec. ¶ 4.)

26

- Superior Court of the State of California for the County of Los Angeles, Case No. 19STCV05084: Currently stayed pending Defendant's interlocutory appeal of the denial of his motion to compel arbitration. (Sher Dec. ¶ 5.)

As a result, this case will likely be resolved more expeditiously in this Court, particularly if Plaintiffs are successful on their pending MSJ on the issue of liability. If Plaintiffs' MSJ is granted, the only issue remaining would be the proper measure of Plaintiffs' contract damages, an issue that does not arise in any of the other pending lawsuits. "Because '[s]ubstantial justice is obtained by the prompt and comprehensive disposition of litigation,' . . . the interests of justice cannot be served . . . where transfer of the case to another jurisdiction will likely result in a decreased chance of a prompt decision in the controversy." *Frazier v. Commercial Credit Equip. Corp.*, 755 F. Supp. 163, 167 (S.D. Miss. 1991).

**Local Interest**. Defendant also has not established, by clear and convincing evidence, that California has any local interest in the controversy that would warrant the unusual action of transferring this suit for breach of a contract that is governed by New York law. The trademark litigation pending in California does not change this. While both actions involve a dispute over use of the name "ANDREWS," the claims in the California action are brought as statutory and common law trademark claims, each with unique legal issues and defenses, such as ownership, validity, and fair use. This action, on the other hand, concerns only one Defendant's use of the "ANDREWS" corporate name in breach of a contractual provision that prohibits him from using the "ANDREWS" name in a corporate name after the closing date. While Defendant asserts that "[t]he damages assessment in both cases relies upon valuation of the same assets" (Dkt. 26, § 2.A), the remedy sought in the California trademark action is the disgorgement of the defendants' revenues. (Sher Dec. ¶ 2.) Damages in this case would only involve contract

damages. In *Horowitz v. 148 South Emerson Assocs.*, LLC, 888 F.3d 13 (2d Cir. 2018), cited by Defendant, the breach of contract action involved breach of a trademark license agreement that raised the same validity, ownership, and infringement issues for use of the trademark being licensed. None of those issues apply in this case. "[T]here will be no duplicative litigation or inconsistent results." *Encompass Aviation*, 2018 WL 6713138, at *11.

**Law of the Forum**. Defendant also cannot "demonstrate[] that the familiarity of the forum with the governing law warrants a transfer." *Id.* at *10. The SPA provides that New York law governs the parties' contract claims.[5] (SPA § 11.13.) Although Defendant erroneously contends this factor is neutral (Dkt. 26, § II.B.8), "[i]t is well-established that courts in a home forum are better suited to construe that forum's state law than courts in other fora." *Opera Solutions*, 2015 WL 1378968, at *3; *Encompass Aviation*, 2018 WL 6713138, at *10. Like the defendant in *Encompass Aviation*, Defendant fails to meet his burden to justify departure from "the strong federal public policy supporting the enforcement of forum selection clauses" and disregard of Plaintiffs' choice of forum. 2018 WL 6713138, at **5, 10. There is "no reason" to transfer this case to California, but there is "every reason to keep it here, in accordance with the Parties' contract[]." *Id.* at *11.

## C.    The First-Filed Rule Does Not Support A Dismissal, Transfer, Or Stay.

Defendant also contends that the first-filed rule warrants dismissal, transfer of this action to the Central District of California for consolidation with the California trademark action, or stay of this action. Under the first-filed rule, there is a general presumption that "where there are

---

[5] Defendant's assertion that the phrase "domestic laws of the State of New York" refers only to "domestic relations laws," and not to New York's substantive laws, strains credulity and is not consistent with ordinary usage—New York domestic relations law would have no relevance to the interpretation or enforcement of a commercial contract. *See LaSalle Bank Nat. Ass'n v. Nomura Asset Capital Corp.* 424 F.3d 195, 206 (2d Cir. 2005).

two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience . . . or . . . special circumstances . . . giving priority to the second." *First City Nat'l Bank & Trust Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir. 1989). "This presumption, however, is not to be applied in a 'rigid' or 'mechanical' way, and is quite commonly overcome where circumstances warrant." *Dornoch Ltd. ex rel. Underwriting Members of Lloyd's Syndicate 1209 v. PBM Holdings*, 666 F. Supp. 2d 366, 369 (S.D.N.Y. 2009).

### 1.    The Parties' Forum Selection Clause Trumps The First-Filed Rule.

Defendant again discounts the import of the parties' forum selection clause. "It is improper for a party to invoke the first filed doctrine in the face of a clearly articulated forum selection clause in a contract." *Megadance USA Corp. v. Kristine Knipp*, 623 F. Supp. 2d 146, 149 (D. Mass. 2009); *see also e.g., Dornoch*, 666 F. Supp. 2d at 370 ("[B]ecause the forum selection clause unequivocally requires the parties to litigate any dispute arising under the Policy in New York, any effort by PBM to dismiss this action in favor of the Virginia Action must fail."); *Hy Cite Corp. v. Advanced Mktg. Int'l, Inc.*, No. 05-cv-722, 2006 WL 3377861, *4 (W.D. Wis. Apr. 10, 2006) ("The interests of justice mandate that the first-to-file rule should not be applied to plaintiffs' action because of the forum selection clause contained within individual plaintiffs' agreements."); *Universal Operations Risk Mgmt., LLC v. Global Rescue LLC,* No. 11-cv-5969, 2012 WL 2792444, *6 (N.D. Cal. July 9, 2012) ("The first-to-file rule is not a legitimate basis for permitting the individual [parties] to escape their contractual obligation to litigate their claims in the parties' agreed upon forum.").

### 2.    The Parties And Claims Are Not Sufficiently Similar.

Notwithstanding the forum selection clause, the first-filed rule would not even apply here for the additional reason that the parties and claims in the California trademark action are not sufficiently similar to the ones here. "When considering whether to dismiss the second action,

29

the court considers whether the lawsuits at issue assert the same rights, and seek relief based upon the same facts." *Castillo v. Taco Bell*, 960 F. Supp. 2d 401, 404 (E.D.N.Y. 2013). "The lawsuits need not be identical, but the claims and rights raised in the two actions <u>must not differ substantially</u>." *Id.* at 404 (emphasis added); *Wyler-Wittenberg v. MetLife Home Loans, Inc*., 899 F. Supp. 2d 235, 244 (E.D.N.Y. 2012) ("Proper application of the 'first-filed' rule requires that the first and subsequently filed cases(s) have either identical or substantially similar parties and claims."); *Curtis v. Citibank, N.A*., 226 F.3d 133, 136 (2d Cir. 2000) (dismissal under first-filed rule inappropriate where claims in both suits were "not entirely duplicative"); *Gen. Bank, N.Y. Branch v. Wassel*, 779 F. Supp. 310, 313 (S.D.N.Y. 1991) (denying transfer where parties were different and actions were distinct).

With respect to the parties, the plaintiffs between the California trademark action and this one differ. While Defendant is a defendant in both actions, none of the other four defendants in the California trademark action are parties here. Defendant is the only common party. The claims in the two actions are also distinct. At issue in this action is whether Defendant's use of the "ANDREWS" corporate name after closing violated the contractual obligation in the SPA to not use that name after closing. The California trademark action asserts statutory and common law claims for trademark infringement, false designation of origin and false description, and unfair competition under the California Unfair Competition law. This action alleges no dispute over ownership of a trademark, validity of a trademark, or whether conduct infringes a trademark, but those are all issues in the California trademark action.

Defendant cites *Horowitz v. 148 South Emerson Associates, LLC*, 888 F.3d 13, 23 (2d Cir. 2018), as holding that a trademark case and breach of contract case "depended on the same core showing about the same trademarks" and were "'based on' the same underlying claims of

ownership and use rights." The Second Circuit made this finding in comparing the action to a previously-dismissed action for purposes of a Federal Rule of Civil Procedure 41(d) award of costs. It was not addressing the first-filed rule. Defendant also cites to the district court's opinion, *Horowitz v. 148 South Emerson Assocs., LLC*, No. 16-cv-2741, 2016 U.S. Dist. LEXIS 185189, at **1, 34-35 (E.D.N.Y. Oct. 19, 2016), as "finding significant overlap of parties and claims where first filed trademark infringement case and the second filed breach of contract case involved the same validity, ownership and infringement issues for use of the trademark." The district court's ruling applying the first-filed rule, however, was vacated on appeal and a vacated opinion "is not a proper precedent on which to rely." *Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.*, 126 F. Supp. 2d 596, 640-41 (W.D.N.Y. 2001), *aff'd in part and rev'd in part*, 302 F.3d 83 (2d Cir. 2002).

Nonetheless, *Horowitz* is distinguishable from this case because the contract at issue in *Horowitz* was a trademark license agreement and the breach at issue was the defendant's continued use the trademark after the license agreement had been terminated. A breach of a trademark license agreement under those circumstances would necessarily constitute trademark infringement, so it is unsurprising that both claims would depend on the same trademarks and same underlying claims of ownership and use rights. The conduct at issue in this action, however, could still breach the SPA, regardless of whether the "ANDREWS" name is a valid trademark or whether Defendant's use is permissible under the Lanham Act.

*Horowitz* also involved a dispute over the ownership of the trademarks and the validity of the license agreement. The contract claim in this action does not depend on ownership or validity of the trademark in the California trademark action, but rather rests solely on interpretation of the language in the parties' contract. Conversely, the contractual obligation to cease all use of the

31

"ANDREWS" corporate name after closing has no bearing on the California trademark action and, accordingly, the SPA has not been alleged in the pleadings in that case. Contrary to Defendant's assertion, no inconsistent judgment could result from the two cases. Nor is there any "potential for Randy paying twice for the same alleged damages." The California trademark action seeks only disgorgement of Defendants' revenues, while damages in this case involve contract damages. This Court is the only court that is considering the merits of whether Defendant breached the SPA and the measure of Plaintiffs' contract damages.

### D.   Defendant's Undue Delay Warrants Denial Of His Transfer Request.

"Though the Federal Rules of Civil Procedure do not set a time limit on when a motion to transfer can be made, it is clear that unreasonable delay can be a factor in a court's denial of such a motion." *Aquatic Amusement Assocs. v. Walt Disney World Co.*, 734 F. Supp. 54, 59 (N.D.N.Y. 1990); *Carter v. U.S. Lines Co.*, 200 F. Supp. 707, 709 (S.D.N.Y. 1961) ("[D]efendant's delay in making its motion is a fact to be taken into consideration in exercising my discretion under 1404(a)"). As one court explained:

> Where a party … has allowed a significant amount of time to pass before the request to transfer is made, the forum court has had the opportunity to involve itself in the management of the lawsuit and to familiarize itself with the issues presented by the case.  A transfer of the case at that stage would greatly diminish the value of the judicial resources that had so far been expended in the matter, since the forum court's familiarity with the case would no longer be of benefit. The Court firmly believes that the diminishment of judicial resources that would be occasioned by motions to transfer that come at such late stages in the lawsuit do not promote and, indeed, greatly hinder the interests of justice and should therefore prevent the granting of motions to transfer when these circumstances are before the court . . .

*Frazier*, 755 F. Supp. at 167-68 (denying transfer where party waited too long).

This action was initially filed in the Supreme Court of the State of New York for the County of New York over a year ago, on July 15, 2019. (Dkt. 1-1.) Defendant himself invoked then this Court's jurisdiction and removed the action to this Court. (Dkt. 1.) Defendant answered

32

the Complaint on October 15, 2019 and raised no objection to venue. (Dkt. 11.) Instead, Defendant delayed and litigated this action for almost one year before requesting a transfer in August of 2020, shortly before the close of discovery on August 22, 2020 (Dkt. 29) and only after receiving Plaintiffs' MSJ filed on August 3, 2020. (Dkt. 19.) A transfer at this stage "would greatly diminish the value of the judicial resources that [have] so far been expended in the matter" and might delay the final resolution of the lawsuit. *Frazier*, 755 F. Supp. at 167; *Hamilton Int'l Ltd. v. Vortic LLC*, 414 F. Supp. 3d 612, 624 (S.D.N.Y. 2019) (denying defendants' motion to transfer made after plaintiff moved for summary judgment and where "[v]irtually all of Defendants' arguments . . . could have been made earlier in this litigation"); *U.S. v. Stamps*, No. 18-cv-1106, 2018 WL 6031155, *3 (E.D.N.Y. Nov. 16, 2018) (denying motion to transfer when "lion's share" of discovery had been completed). Defendant's request to transfer or stay should be denied as untimely.

## <u>CONCLUSION</u>

Defendant's Omnibus Motion asks the Court to ignore the plain terms of the SPA to which Defendant contractually agreed—specifically, that Defendant agreed not to use the corporate name "ANDREWS" after he sold that name to Plaintiffs for several million dollars, and that, in the event of a breach of the SPA, as here, Defendant agreed it would be adjudicated in New York. Defendant also wants the Court, without any legitimate basis, to disregard well-settled precedent enforcing contractual forum selection clauses. He cannot now be permitted to cherry pick which provisions of the SPA purportedly shield him from liability, while at the same time disclaiming that any of the provisions apply to him since he was only a "Rollover Seller." (*Compare* Dkt. 26, § I.A *with* § I.C.) Defendant's inconsistent and illogical reading of the unambiguous SPA contradicts the SPA's plain text and does not support dismissal of Plaintiffs'

Complaint, transfer of this action, or a stay. Defendant's Omnibus Motion should be denied in its

entirety.

Dated:  New York, New York
   September 17, 2020,

             Respectfully submitted,

             **BRYAN CAVE LEIGHTON PAISNER LLP**

             By:  _/s/  Noah Weissman_____
             NOAH WEISSMAN
             1290 Avenue of the Americas
             New York, New York 10104
             Tel.: (212) 541-2000
             Fax: (212) 541-4630
             _Attorney for Plaintiffs_