**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------------X
                                      :

U.S. SECURITIES HOLDINGS, INC.; U.S. SECURITY   :   **Case No.: 1:19-cv-8025 (CM)**
ASSOCIATES HOLDINGS, INC.,   :
                                        :

                Plaintiffs,   :

                                        :   **ORAL ARGUMENT REQUESTED**

         -against-   :
                                        :

RANDY ANDREWS,   :
                                        :

                Defendant.   :
                                        :
----------------------------------------------------------------------X

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF, AND IN RESPONSE TO PLAINTIFFS' OPPOSITION TO, DEFENDANT'S OMNIBUS MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND LACK OF STANDING UNDER FED. R. CIV. P. 12(c) OR, IN THE ALTERNATIVE, MOTION TO TRANSFER UNDER 28 U.S.C. § 1404(a) OR, IN THE ALTERNATIVE, MOTION TO** <u>**DISMISS, TRANSFER, OR TO STAY THE CASE UNDER THE FIRST FILED  RULE**</u>

# DATE OF FILING AND SERVICE:  OCTOBER 5, 2020

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................ 1

SUMMARY OF ARGUMENT ............................................................................... 1

ARGUMENT ........................................................................................................ 2

I. PLAINTIFFS' "PRELIMINARY STATEMENT" ARGUMENTS MISLEAD, MISAPPLY AND/OR FAIL TO REBUT DEFENDANT'S MOTION .............................. 2

A.   The NY Andrews Name Case Is A Breach Of Contract Claim For A Complex Multiparty, Multi-Section 70-Page Agreement ................................................ 2

B.   The Three California Cases Have Been Actively Litigated While The NY Andrews Name Case Is A Duplicate Tag-Along Case ................................................ 3

C.   Plaintiffs' "Preliminary Statement" Scattershot Arguments Fail ...................... 3

II. PLAINTIFFS' LINGUISTIC CALISTHENICS UNDERMINES  THEIR ARGUMENTS ................................................................................................6

A.   The Unambiguous Language Of The SPA Precludes Plaintiffs' Contract Claim .......... 6

1. Plaintiffs' Incongruous SPA Sections 9.02, 9.02(e) And 9.09 Arguments Fail .............. 7

2. SPA Sections 9.02(e) DOES Preclude Plaintiffs' Claim ........................................ 7

3. SPA Section 9.09 DOES Apply ...................................................................... 8

4. Plaintiffs Misrepresent Defendant's Arguments Regarding The SPA  ....................... 10

B.    The Owner Of The Trademarks Is A Necessary And Indispensable Party ................. 11

C.    Defendant CANNOT Be Liable Nor Sued For Breach Of The SPA ............................. 12

III. DEFENDANT DID NOT WAIVE HIS RIGHT TO CHALLENGE VENUE, AND THE TOTALITY OF THE CIRCUMSTANCES WARRANTS TRANSFER .............12

IV. THE FIRST-FILED RULE SUPPORTS A STAY, TRANSFER OR DISMISSAL ...... 13

CONCLUSION .................................................................................................. 15

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Castillo v. Taco Bell*,
  960 F. Supp. 2d 401 (E.D.N.Y. 2013) ................................................................................. 14

*Childs v. Levitt*,
  151 A.D.2d 318 (1st Dept. 1989) ....................................................................................... 11

*Handoush v. Lease Fin. Grp., LLC*,
  41 Cal. App. 5th 729 (Ct. App. 2019) .................................................................................. 6

*Horowitz v. 148 South Emerson Assocs., LLC*,
  888 F.3d 13 (2d Cir. 2018) ........................................................................................... 14, 15

*Klauber Bros. v. Russell-Newman, Inc.*,
  No. 11 Civ. 4985, 2013 U.S. Dist. LEXIS 42758 (S.D.N.Y. March 26, 2013) ................... 3, 11

*Nintendo of America, Inc. v. Dragon Pacific Int'l*,
  40 F.3d 1007 (9th Cir. 1994) .......................................................................................... 2, 4

*Oleg Cassini. Inc. v. Serta. Inc.*,
  No. 11 Civ. 8751, 2012 U.S. Dist. LEXIS 33875 (S.D.N.Y. 2012) ....................................... 14

*Vt. Teddy Bear Co. v. 538 Madison Realty Co.*,
  1 N.Y.3d 470 (2004) .......................................................................................................... 11

**RULES**

Fed. R. Civ. P. 12(b)(6) ...................................................................................................... 10

Fed. R. Civ. P. 12(c) .......................................................................................................... 10

Fed. R. Civ. P. 19 ............................................................................................................ 1, 5

Fed. R. Civ. P. 41(d) .......................................................................................................... 15

## PRELIMINARY STATEMENT

Defendant Randy Andrews ("Randy" or "Defendant") respectfully submits his Reply Memorandum of Law in support of Defendant's Omnibus Motion ("Defendant's Motion"). Plaintiffs' opposition to Defendant's Motion fails to refute any analysis, supporting authority, or factual basis for granting Defendant's Motion. Besides conceding, and leaving undisputed, many of Defendant's arguments, Plaintiffs distort and/or ignore salient facts and misstate and/or misapply the law that actually compels stay, transfer, or dismissal of this claim. In fact, Plaintiffs' silence on key issues provides the loudest voice for granting Defendant's Motion.

## SUMMARY OF ARGUMENT

Plaintiffs' opposition to Defendant's Motion fails for any or all of the following reasons:

1.  Plaintiffs provide no legal authority or factual basis to find Defendant can be individually liable for breach of contract under SPA Section 11.18 since they completely ignore the distinction between the six specifically defined signatory parties to the SPA: "Seller," "Rollover Seller," "Company," "Cash Seller," "Parent," "Buyer," (the "Six Signatories"). Plaintiffs' also ignore Randy's signature on the SPA, that is clearly set forth as a "Rollover Seller."

2.  Plaintiffs' failed to acknowledge the distinct obligations specifically identified by the plain language of each Section of the SPA and to whom (*i.e.*, which specific party) each applies.

3.  Plaintiffs concede that Defendant cannot be liable for the breach of contract claim under SPA Section 11.18 as an "Affiliate" or through the "Seller."

4.  Plaintiffs' interpretation of the SPA language they rely on in their Complaint for alleged recovery of attorney's fees -- and their now hindsight feeble attempt to disown it.

5.  Plaintiffs' sole theory for liability against Randy individually, under SPA Section 11.18, fails since: Plaintiffs concede that "they are not suing Defendant as a corporate officer of an entity that breached the SPA and are ___not seeking to hold Defendant liable for the *Seller*'s breach of the SPA___"; even assuming Randy Andrews is a party in his individual capacity (he is not), there is no rational or feasible basis for his liability under Section 11.18, which specifically identifies the only obligor-signatory party that would be liable, and that is the "Seller."

6.  Plaintiffs cannot distinguish between the Cal. Andrews name case and the NY Andrews name case so they rely on superficial use of labels and ignore the identical basis for liability ("use" of a company name) and the identical components of damages calculations (*e.g.*, Goodwill). Moreover, Plaintiffs' Rule 19 arguments that the owner of the Trademarks bears no connection to

the breach of contract claim is incorrect since the accused act, *i.e.*, "use," and the components of damages calculations in the Cal. Andrews name case brought by the owner of the marks and in the NY Andrews name case are identical. *See Nintendo of America, Inc. v. Dragon Pacific Int'l*, 40 F.3d 1007, 1010 (9th Cir. 1994) ("recovery of both plaintiff's lost profits and disgorgement of defendant's profits is generally considered a double recovery under the Lanham Act").

7.   Plaintiffs' legal authorities, and the unambiguous language of the SPA, support rather than refute Defendant's Motion.

8.   Under the guise of a breach of contract claim, Plaintiffs' attempt to re-write the SPA to include, *inter alia*, a non-compete provision even though one was separately executed with Defendant and is the basis for one of the California lawsuits against Defendant.

## ARGUMENT

## I.   PLAINTIFFS' "PRELIMINARY STATEMENT" ARGUMENTS MISLEAD, MISAPPLY AND/OR FAIL TO REBUT DEFENDANT'S MOTION

Plaintiffs' claimed "straightforward breach of contract case" "actively litigated" is neither.

### A.   The NY Andrews Name Case Is A Breach Of Contract Claim For A Complex Multiparty, Multi-Section  70-Page Agreement

Plaintiffs' so-called "straightforward breach of contract case," assertedly "actively litigated," is a breach of contract claim based on a 70-page contract that includes 104 Sections, 10 pages  of over 100 definitions, multiple exhibits, additional agreements, and the Six Signatories.

Despite Plaintiffs' transparent attempt to eliminate and ignore the complexities of the multiparty, multi-section SPA, and any distinctions between the specifically defined Six Signatories, and each of their clearly delineated rights and obligations specifically described in each of the 104 Numbered Sections (not including the subsections within the numbered Sections), the unambiguous language of the SPA stubbornly speaks for itself. Moreover, the unambiguous words of the SPA reveal the following undeniable and relentlessly stubborn truths:

1.   Defendant, Randy Andrews, sued here in his individual capacity, is neither a signatory nor an obligor-signatory to the SPA in his individual capacity, or any capacity other than the clearly defined "Rollover Seller" capacity, evidenced by the designated signature block.

2.   As is the case for each of the Six Signatories, Randy is an SPA party only in his defined

signatory capacity (*i.e.*, "Rollover Seller") and is an obligor-signatory only as provided in the SPA Sections that specifically include "Rollover Seller" as an obligor under that particular SPA Section. *See Klauber Bros. v. Russell-Newman, Inc.*, No. 11 Civ. 4985, 2013 U.S. Dist. LEXIS 42758, at *1, *6 - *7 (S.D.N.Y. March 26, 2013) (dismissing breach of contract claim against specific obligor in multi-obligor contract since the specific contractual obligation allegedly breached was not imposed on the specific obligor).

3.  Rollover Seller **is not** an obligor-signatory under SPA Section 11.18.

**B.  The Three California Cases Have Been Actively Litigated While The NY Andrews Name Case Is A Duplicate Tag-Along Case**

As for this case being "actively litigated," from entry of the Case Management Plan (11.08.2019) to the first filing of the current motions (08.03.2020), **coincidently during the Covid-19 pandemic**, any "active litigation" occurred in the three California cases. No depositions were  taken in this case and, pursuant to a joint discovery agreement, almost all documents relied upon herein were produced in the California cases long prior to any "activity" in this case.

**C.  Plaintiffs' "Preliminary Statement" Scattershot Arguments Fail**

Plaintiffs' "Preliminary Statement" arguments fail for any or all of the following reasons:

1.  Plaintiffs make no meaningful arguments against staying the NY Andrews name case.

2.  Plaintiffs fail to rebut the potential double recovery that could result from litigating both the first-filed Cal. Andrews name case and the later-filed NY Andrews name case. Plaintiffs' reliance upon general labels regarding recoverable damages in the Cal. Andrews name case and the NY Andrews name case also ignores the fact that the damage components and calculations are identical: the revenues allegedly generated by "use" of the ANDREWS name. Additionally, any alleged revenues would accrue to AGS, a non-party in the NY Andrews name case and a defendant in the Cal. Andrews name case where Randy is also a named defendant. Thus, Plaintiffs' argument concerning the necessary and indispensable party to this litigation is completely off the mark. The basis for the claims and damages are the same in both cases. The breach damages, a necessary

element of the contract claim, and the disgorgement of revenues, is the same. *See Nintendo of America, Inc.,* 40 F.3d at 1010 ('loss' and 'gain' a "double recovery under the Lanham Act")**.**

3.   The SPA is a stock purchase agreement, not a sale of the ANDREWS name. As defined and recited in the SPA, the "Seller" sold ***stock, not a name***, to the "Buyer."

4.   There is no evidence that Randy "established a new security services company prominently 'using' the 'ANDREWS' corporate name." Non-party AGS was formed by non-party Lee Andrews. AGS, Lee Andrews, and Randy are named defendants in the Cal. Andrews name case.

5.   Contrary to Plaintiffs' baseless argument, the designation of a signatory as a "party" to a contract does not automatically expose that signatory to contractual liability for alleged breach of any and all obligations expressed in a multi-party contract. A multi-party contract signatory is bound only by obligations that apply to that signatory. Significantly, the SPA specifically identifies the obligors under Section 11.18, and "Rollover Seller" is not one of them, and the only SPA obligor-signatory explicitly subject to a claim for breach thereof is the "Seller"-- not an "Affiliate" and not one merely designated as a "party." *See* Dkt. No. 26, pp. 9-11. The parties to the SPA could have included Randy as a signatory to the SPA in his individual capacity and named him individually or included Rollover Seller in Section 11.18. They did neither. Plaintiffs may not do so now. Significantly, Randy's execution of the SPA makes him a specifically defined "party" as a "Rollover Seller" liable only for those Sections of the SPA that specifically include "Rollover Seller." Any contrary interpretation renders every distinction of the 104 Sections meaningless and superfluous. However, according to Plaintiffs hindsight re-write, the SPA should simply be read as including the following: "Anyone that signs this agreement is liable for every obligation stated in each of the 104 Sections in every capacity possible." Such an absurdity defies credulity.

6.   It is Plaintiffs who want to have it both ways under Sections 9.02 and 9.09. They use it in

the Complaint to recover attorney's fees, but now they say it applies to indemnification only and then say that they are not seeking indemnification for the Seller's breach of SPA Section 11.18. Plaintiffs also concede that they are not suing Randy as a Rollover Seller, nor as an alter-ego of the Seller, nor for indemnification as an "Affiliate" of the Seller.

7.   The Rule 19 analysis is informed by the measure of damages that is the same, and for the same act (use of the name), and the indispensable party that has already sued Randy in the Cal. Andrews name case. The complete adjudication of the rights between the indispensable party and Randy cannot be accomplished without the indispensable party. Plaintiffs' characterization of the indispensable party as a "different plaintiff" conveniently obscures the fact that the indispensable non-party is the owner of the rights inherent in the measure of damages identical to both cases and that said "different plaintiff" is Plaintiffs' related entity. Furthermore, Plaintiffs' assertion that there are additional defendants in the Cal. Andrews name case only supports rather than refutes Defendant's Motion. The proper adjudication of the rights and duties among all of the relevant parties will be achieved in the California forum where it may be decided in an efficient manner, avoid the potential for duplicate recoveries or inconsistent judgments, and not reward Plaintiffs and their related entities for vexatious litigation tactics of improperly splitting claims.

8.   The forum selection clause is not absolute. As conceded by Plaintiffs, and as is clear from the Complaint caption, Plaintiffs are suing Randy in his non-obligor-signatory individual capacity. Since "Randy Andrews" is included nowhere in the SPA other than as an officer in Section 11.04 and the "Rollover Seller" designated signature line, Randy did not agree, nor was he informed, that he would be subject to the SPA forum selection clause in his individual capacity.

9.   The undue prejudice to Randy in allowing the NY Andrews name case to proceed against him in his individual capacity is further compounded because, in the Cal. Andrews name case

brought against him in his individual capacity, he enjoys his Seventh Amendment right to a jury trial, a right which trumps the forum selection clause. *See, e.g.*, *Handoush v. Lease Fin. Grp., LLC*, 41 Cal. App. 5th 729, 734-35 (Ct. App. 2019) (right to jury trial un-waivable pre-dispute).

10. Contrary to Plaintiffs' assertion that Defendant's Motion is a "delay tactic," Plaintiffs twice rejected Defendant's offer to transfer and consolidate the NY Andrews name case with the Cal. Andrews name case to avoid motion practice and thereby preserve judicial and party resources. Deciding any part of Defendant's Motion (which was filed essentially at the same time as Plaintiffs' MPSJ) is less time consuming; and granting any part of Defendant's Motion obviates the need to analyze Plaintiffs' MPSJ's 1,000 pages of exhibits, party briefs and R. 56.1 statements.

## II. PLAINTIFFS' LINGUISTIC CALISTHENICS UNDERMINES THEIR ARGUMENTS

### A. The Unambiguous Language Of The SPA Precludes Plaintiffs' Contract Claim

Plaintiffs' twisted logic and interpretations of SPA Sections 9.02 and 9.09 and 11.18 are remarkable. First, at least when this case was filed (and likely before), through and including September 17, 2020, Plaintiffs alleged that Section 9.02 is applicable to their claim against Randy. Now, in a footnote in their opposition memo of law, Plaintiffs improperly attempt to amend their Complaint, asserting that their allegation in the Complaint was a "mistake."

Plaintiffs also now insist that Sections 9.02 and 9.09 are for indemnification claims, yet they concede that they are not suing Randy for indemnification for any alleged breach of Section 11.18 by the "Seller" -- the only obligor-signatory party that can be liable under Section 11.18. They also concede that they are not suing, and cannot sue, Randy for breach of Section 11.18 as a Rollover Seller since he is not an obligor-signatory party that can be liable under Section 11.18. Yet, somehow, they are asserting a non-direct, non-indemnification claim against Randy for "breaching" a provision that they concede he cannot be held liable for breaching directly or

6

indirectly under the plain language of the SPA and Section 11.18. Plaintiffs' confused and shifting positions for their pleaded breach of contract claim against Randy should respectfully be rejected.

### 1.   Plaintiffs' Incongruous SPA Sections 9.02, 9.02(e) And 9.09 Arguments Fail

Plaintiffs have twisted themselves into a pretzel with their arguments and now find themselves in the awkward position of having to deny the allegations in their own Complaint. They try to improperly amend Complaint paragraph number 51 in a memo of law footnote by now asserting an SPA Section number different than originally alleged in Section 9.02. Plaintiffs alleged that Randy is liable as an "Affiliate" in his Officer capacity but now disavow seeking to sue him in that official capacity to avoid the controlling authority that precludes suing him individually based upon his official capacity and the Section 9.02(e) preclusion against suing an Officer Affiliate.

### 2.   SPA Sections 9.02(e) DOES Preclude Plaintiffs' Claim

Plaintiffs assertion that Section 9.02(e) "merely states **indemnification** claims" is patently false. Section 9.02(e) does not include the word "**indemnification**." It "**merely states**" "**claim**." Plaintiffs also inexplicably cite the specific language, "expressly identified as a party hereto," to assert that SPA Rollover Seller, Randy Andrews, who is "expressly identified" as a defined "Rollover Seller" party, is miraculously converted into Randy Andrews the individual party.

Plaintiffs' specious argument that Section 9.02, and in particular Section 9.02(e), only applies to "pre-closing" events, and is limited to "representations and warranties," contradicts Section 9.02(e), which applies to "breach of any of the representations, warranties, covenants, **or agreements of any party hereto set forth or contained in this Agreement**." Plaintiffs' attempt to limit Section 9.02 to only "pre-closing" events is debunked by the unambiguous language of Section 9.02 concerning post-closing matters (*e.g.*, Section 9.02(d) refers to "post-closing taxes").

Similarly, Plaintiffs, in their attempt to shoehorn the provision into their unfounded

interpretation of Section 9.02, ignore Section 9.02(e)'s prefacing phrase, "Notwithstanding any other provision of this Agreement." However, Plaintiffs cannot avoid the reality that they are suing for post-closing breach of Section 11.18, which is an "**agreement**[ ] … **contained in this Agreement** [the SPA]," as specifically and unambiguously stated in Section 9.02(e). Plaintiffs incorrect limited reading of Section 9.02, and specifically 9.02(a), completely ignores the plain and unambiguous language of Section 9.02(e) and would render Section 9.02(e) superfluous.

**3.   SPA Section 9.09 DOES Apply**

Plaintiffs' argument concerning Section 9.09 starkly contradicts the Section's unambiguous language. Plaintiffs conveniently ignore the very language that they emphasize, *to wit*, "with respect to (**i) the subject matter of this Agreement or the transactions contemplated hereby or (ii) any other matter relating to the Company or its Subsidiaries *prior to the closing***." If Section 9.09 only applied to pre-closing events there would be no need to separate out Subsection 9.09(b)(i) with the "or" clause contained in Subsection 9.09(b)(ii). Any other interpretation either reads Subsection 9.09(b)(i) out of Section 9.09, rendering it meaningless, or renders Subsection 9.09(b)(ii) redundant. The only interpretation of Section 9.09 that properly integrates each clause and retains the meaning of both is that: clause (i) is not limited to pre-closing matters and the "or clause (ii)" is limited to the specifically stated pre-closing events.

Section 9.09(b), which clearly and specifically precludes a claim "seeking damages for breach of contract," precludes Plaintiffs' breach of contract claim. Plaintiffs completely ignore the separation of clause (i) and clause (ii) by the word "or" and the existence of clause (ii). Plaintiffs' interpretation that they both apply to pre-closing events eliminates all of the words after the word "hereby" except for "prior to the closing," reading them out of the two separate clauses as meaningless, redundant, and unnecessary. Such interpretation finds no support in law or fact and

Plaintiffs can point to none. Contracts should be read and interpreted to breathe life into the words that are used rather than rendering them useless surplusage. Clause (i) contemplates future unknown events that encompass the subject matter of the Agreement (e.g., the subscription agreement, employment agreements, etc.) and contemplated transactions (which by definition include future performance and/or non-performance "contemplated" in various SPA Sections). Whereas clause (ii) necessarily applies to specific known pre-closing activities (since there are tiered limitations on pre-closing activity liability amounts). Otherwise, the "subject matter of the Agreement" and "contemplated transactions" phrases are useless surplusage.

Significantly, Plaintiffs also ignore the modifiers for clauses (i) and (ii). Whereas clause (i) applies to "any Person" with respect to the subject matter of the Agreement and contemplated transactions without a specific time limitation, clause (ii) applies to the much narrower universe of "the Company or its Subsidiaries" (Andrews Holding Co. and its Subsidiaries) and only as to that universe for conduct occurring "prior to the closing." This is further supported by the parenthetical immediately following clause (ii) which describes various types of potential claims which may arise in the future based upon conduct from the past operation of a business.

Plaintiffs also conveniently ignore that Article 9's specific title includes and specifically applies to "Tax Agreements" which require and account for all manner of implications based upon when a "taxable event" occurs, therefore requiring a temporal allocation and apportionment.

Plaintiffs' attempt to distinguish "claim" from "cause of action" would be laughable if their vexatious and punitive litigation strategy were not so serious and prejudicial. First, "cause of action" is not found in the 70-page, 104 Sections of the SPA, whereas "claim" is found 123 times throughout the SPA. Plaintiffs' distinction and interpretation renders every use of the word "claim" in the SPA as limited to indemnification "claims." Furthermore, Plaintiffs' interpretation defies

the language of Fed. R. Civ. P. 12(b)(6) (failure to state a "claim") by which Defendant's Fed. R. Civ. P. 12(c) motion will be decided.

Plaintiffs' characterization of "UNKOWN CLAIMS" and insistence that the absence of the word "FUTURE" in Section 9.09(b) somehow limits its application is bizarre. By its definition, "Unknown" includes future occurrences that may be rooted in past events or events that occur in the future. "Claims" can be based upon past events yielding an unforeseen occurrence in the future or future occurrences that are based upon unforeseen future events. Thus, "UNKNOWN CLAIMS" includes both claims that are based upon conduct that occurred pre-closing but are unforeseen *and* conduct that occurs post-closing (in the future) which is also unforeseen due to the constraints of time travel and unreliable crystal balls. In either case, the failure to include the word future is of no consequence to the ordinary and plain meaning of "UNKNOWN CLAIMS."

### 4. Plaintiffs Misrepresent Defendant's Arguments Regarding The SPA

Contrary to Plaintiffs' mis-citing and mischaracterization of Defendant's interpretation of SPA Sections 9.02(e) and 9.09, Defendant ***has not*** "contended" that those Sections be interpreted as Plaintiffs have stated. Moreover, Plaintiffs' mischaracterization of Defendant's "sweeping interpretation of Sections 9.02 and 9.09" bears no resemblance to Defendant's arguments. Rather, it is a convoluted contrivance intended to escape the consequences of the interpretation of the SPA's unambiguous language agreed to by Plaintiffs. Plaintiffs' mischaracterization of the interpretation of the unambiguous language of the SPA does not alter the analysis. Plaintiffs may be dismayed by the impact and effect the plain language of the SPA has on their hindsight wishes and desires of what it could have said, or might have said, but that does not permit them to re-write the SPA to fit their contextual wishes and desires today. Plaintiffs' twisting of the unambiguous language of those SPA Sections, to impose on Defendant punitively and vexatiously a false

"contextual" narrative, is defied by the plain meaning of that same unambiguous language residing within the four corners of the SPA.  *See, e.g., Klauber Bros.*, No. 11 Civ. 4985, 2013 U.S. Dist. LEXIS 42758, at *1, *8 - *9  ("simply because [plaintiff] claims, in effect, that it struck a bad bargain with [defendant] does not allow Court to alter the plain meaning of … Agreement"); *Vt. Teddy Bear Co. v. 538 Madison Realty Co.,* 1 N.Y.3d 470, 475 (2004) (cautioning courts to not interpret agreement to impliedly state something parties neglected to specifically include); *see also Childs v. Levitt*, 151 A.D.2d 318, 320 (1st Dept. 1989) ("Equity will not relieve a party of its obligations under a contract merely because [in] hindsight, it appears to have been a bad bargain.").

## B.  <u>The Owner Of The Trademarks Is A Necessary And Indispensable Party</u>

Plaintiffs' argument is an abundance of smoke and mirrors about mergers, and different entities and various moving parts, intended to obscure the reality that the owner of the Trademarks that has sued Randy in the first-filed Cal. Andrews name case is a necessary and indispensable party in the NY Andrews name case. First, it is notable that Plaintiffs' merger assertions fail to address what, if any, assets may have been spun off or excluded in the mergers (as is often the case). Second, Plaintiffs concede that their related entity, the plaintiff in the Cal. Andrews name case, owns the very Trademarks that comprise the value and "Goodwill" for the "use" of the ANDREWS name. As is understood, enforcing Trademark rights not only depends on unauthorized "use" but also requires an owner's continued "use" to maintain those rights.

Third, and most importantly, as has been exhaustively argued in Defendant's Motion and summarized herein, the identical "use" and damages issues in the first-filed Cal. Andrews name case and the NY Andrews name case unduly prejudice Randy and thereby compels stay, transfer or dismissal of this case in the absence of the owner of the ANDREWS Trademarks. No convoluted argument by Plaintiffs can hide or defeat that fact.

11

### C.  Defendant CANNOT Be Liable Nor Sued For Breach Of The SPA

Unfortunately, there is no way to characterize Plaintiffs' statement that "Defendant signed the SPA without limitation," as other than a bald-faced untruth. Randy Andrews' signature is on SPA page number 68 directly under the words "ROLLOVER SELLERS." Furthermore, there are 104 Numbered Sections (not including subsections) in the SPA. Out of the 104 Numbered Sections of the SPA, Rollover Seller is included in six (6) Numbered Sections (*i.e.*, Sections 1.02, 2.03, 9.02, 11.19, 11.22 & 11.25). By contrast, Seller is included in 35 Numbered Sections.

Significantly, Rollover Seller **IS NOT included** in SPA Section 11.18. The Seller is the only obligor-signatory included in that Section. Yet, Plaintiffs not only seek to hold Randy liable under Section 11.18 (that does not include Rollover Seller), they take it a step beyond and assert that he is liable as Randy Andrews, the individual. Although Randy signed the SPA as a clearly and specifically defined "Rollover Seller," Plaintiffs' unreality speaks for itself, lacks any legal support, and certainly runs afoul of the unambiguous language of the SPA and Section 11.18. Try as they may, there is no basis for Plaintiffs' tortured interpretation of Section 11.18 to impose contractual liability on Randy -- a signatory "party" solely in his capacity as "Rollover Seller."

### III. DEFENDANT DID NOT WAIVE HIS RIGHT TO CHALLENGE VENUE, AND THE TOTALITY OF THE CIRCUMSTANCES WARRANTS TRANSFER

As discussed, SPA Section 11.18 does not apply to a breach of contract claim against Randy since he is a party to the SPA only in his capacity as a Rollover Seller. Because Plaintiffs' claim against Randy individually, does not, as a matter of law, arise out of the SPA, Plaintiffs are unable to satisfy what they cite as the third requirement under *Phillips* for enforcing the forum selection clause  -- that the "relevant claims and parties must be subject to the clause." Since Plaintiffs' claim does not fall within Section 11.18, it does not fall within the forum selection clause. Thus, the clause does not apply to the transfer analysis under Section 1404(a).

Given the inapplicability of the forum selection clause to the transfer analysis, the private interest factors, which weigh heavily in favor of transfer, control. Plaintiffs do not address those factors because they know they are strongly in favor of transfer, there being no connection whatsoever to New York of this claim, the parties, or the witnesses. Nevertheless, and contrary to Plaintiffs' argument, the public interest factors also weigh in favor of transfer. Defendant has shown, and Plaintiffs' Complaint reveals, that California has a significant local interest in the controversy warranting transfer. Plaintiffs ignore that Defendant, the four lawsuits' parties, and all of the witnesses reside in California -- where the locus of events occurred in both cases.

The totality of the circumstances compels the conclusion that, in the interest of justice and judicial efficiency, the NY Andrews name case should be transferred to the United States C.D. Cal. where it can then be consolidated with the first-filed Cal. Andrews name case.

## IV. THE FIRST-FILED RULE SUPPORTS A STAY, TRANSFER OR DISMISSAL

Plaintiffs fail to counter Defendant's showing that this case should be dismissed, transferred, or stayed in favor of the first-filed Cal. Andrews name case under the first-filed rule to promote judicial efficiency and avoid duplicative litigation. *See* Dkt. No. 26, pp. 23-25. Plaintiffs acknowledge that the first-filed rule raises a general *presumption* that the first of two competing lawsuits should have priority absent a showing of balance of convenience or special circumstances. Plaintiffs erroneously maintain, however, that the priority given here to the Cal. Andrews name case is overcome because the SPA's forum selection clause "trumps" the first-filed rule.

First, the SPA's forum selection clause does not apply to Randy and, even if it did, it does not "trump" the first-filed rule. Plaintiffs' argument that it is improper for a party to invoke the first-filed rule in light of a forum selection clause misses the mark. All of their cited cases involve a party invoking the first-filed rule that filed the first action, and in a venue contrary to the forum

selection clause venue. Not so here. Plaintiffs' related entity filed the Cal. Andrews name case, then Plaintiffs filed this action. Having been named as a defendant in both actions, Defendant did not engage in the "special circumstances" of forum shopping or anticipatory filing to avoid a forum selection clause. *See Oleg Cassini. Inc. v. Serta. Inc.*, No. 11 Civ. 8751, 2012 U.S. Dist. LEXIS 33875, at *12-13 (S.D.N.Y. 2012) (forum shopping and anticipatory filing overcomes first-filed rule). Applying the first-filed rule here in no way encourages forum shopping or anticipatory filing; rather, it properly negates Plaintiffs' gamesmanship of harassing Defendant through vexatious, multiple litigations of a singular dispute. Moreover, the first-filed rule takes precedence over the forum selection clause given the undisputed absence of any New York connection with the parties and the claims.

Second, the parties and claims in the two lawsuits are not only substantially similar, the gravamen of each is based on the same "use" act and the same damages source. Plaintiffs' suggestion that the claims are distinct because each has a different label is incorrect. Plaintiffs' superficial view ignores both fact and law in assessing the degree of similarity or distinctiveness of claims. Even the *Castillo* case, cited by Plaintiffs, undermines Plaintiffs' contention that the claims in the two actions are not sufficiently similar. As *Castillo* held: "When considering whether to dismiss the second action, the court considers whether the lawsuits at issue *assert the same rights, and seek relief based upon the same facts*." *Castillo v. Taco Bell*, 960 F. Supp. 2d 401, 404 (E.D.N.Y. 2013) (emphasis added). Here, the two actions are (1) grounded in the same rights -- the alleged right to exclusive use of the corporate name ANDREWS, and (2) seek relief grounded in the same central facts -- the alleged "use" by Randy of the corporate name ANDREWS. As the Second Circuit instructed in *Horowitz*, in analyzing similarity of claims: "That two actions involve different theories of recovery [a breach of contract claim and a Lanham Act claim], however, is

not dispositive for Rule 41(d), as its plain language -- 'based on . . . the same claim' -- makes clear." *Horowitz v. 148 South Emerson Assocs., LLC*, 888 F.3d 13, 23 (2d Cir. 2018). Beyond pointing to an irrelevant distinction, Plaintiffs make no effort to refute that *Horowitz* applies here -- because logic and reason compel that it does. Thus, the different labels and particular theories of recovery in the two lawsuits is not determinative, as the actions present a singular dispute against Randy arising from the identical nucleus of operative facts and the same core "use" showing. *See id.* Indeed, many of the allegations in the two cases are the same and the damages assessment relies upon valuation of the same assets. Tellingly, Plaintiffs do not attempt to explain how the damages sought in the two actions differ, and feebly suggest they seek "contract damages" and their related entity seeks "disgorgement of revenues." Plaintiffs' lack of explication speaks volumes confirming the identical nature of the claims in the two cases and the risk of a double recovery against Randy.

Plaintiffs also misconstrue the similarity of the parties. Defendant is a party in both actions. Additional defendants named in the Cal. Andrews name case is irrelevant to application of the first-filed rule since that case will resolve the interests of all the parties. Additionally, Plaintiffs related entity filed the Cal. Andrews name case, they are both represented by the same counsel, and Plaintiffs filed this later action in furtherance of an apparently coordinated effort to harass Defendant through vexatious, multiple litigations of a singular dispute. Should the Court transfer, rather than dismiss, this lawsuit, Plaintiffs cannot complain about being required to litigate their alleged dispute with Defendant in their related entity's first-chosen forum.

## CONCLUSION

For all the reasons and authorities stated above, and in Defendant's Memorandum of Law in Support of Defendant's Omnibus Motion, Defendant respectfully requests that this Court grant Defendant's Omnibus Motion to dismiss, transfer, or stay the NY Andrews name case.

Dated: Syosset, New York
      October 5, 2020

                                Respectfully submitted,

                                TAYLOR ENGLISH DUMA LLP


                                By:  _/s/_____*Robert J. Rando*_____
                                Robert J. Rando, Esq.
                                1325 Avenue Of The Americas, 28th Floor
                                New York, NY 10019
                                Tel.: (646) 993-1898
                                Fax: (770) 434-7376
                                Email: RRando@TaylorEnglish.com
                                *Attorneys for Defendant, Randy Andrews*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that on October 5, 2020, he caused a true and accurate copy of the annexed **DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF, AND IN RESPONSE TO PLAINTIFFS' OPPOSITION TO, DEFENDANT'S OMNIBUS MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND LACK OF STANDING UNDER FED. R. CIV. P. 12(c) OR, IN THE ALTERNATIVE, MOTION TO TRANSFER UNDER 28 U.S.C. § 1404(a) OR, IN THE ALTERNATIVE, MOTION TO DISMISS, TRANSFER, OR TO STAY THE CASE UNDER THE FIRST FILED RULE**, to be served, via Electronic ECF Filing to nmweissman@bclplaw.com and charlene.wang@bclplaw.com, on the following counsel for Plaintiffs:

Noah M. Weissman, Esq.
Charlene Wang, Esq.
BRYAN CAVE LEIGHTON PAISNER LLP
*Attorneys for Plaintiffs,*
*U.S. Securities Holdings, Inc. &*
*U.S. Security Associates Holdings, Inc.*
1290 Avenue of the Americas
New York, New York 10104
Tel: (212) 541-2000
nmweissman@bclplaw.com
charlene.wang@bclplaw.com

Syosset, New York
October 5, 2020

/s/   *Robert J. Rando*
Robert J. Rando
1325 Avenue Of The Americas, 28th Floor
New York, NY 10019
Tel.: (646) 993-1898
RRando@TaylorEnglish.com

17